411 So.2d 1108 (1982)
Mrs. Louise Lagrange Noel, Widow of Lawrence Thomas NOEL, Individually and as Natural Tutrix of Donna Louise Noel, Michael Thomas Noel, Glenda Faye Noel and Linda Kaye Noel, Minors; Arlene Marie Noel; Mrs. Dorothy Lawrence Noel, Wife of Roger Arceneaux
v.
ESGARD, INC. and Continental Insurance Company.
No. 12469.
Court of Appeal of Louisiana, Fourth Circuit.
February 9, 1982.
Rehearing Denied April 16, 1982.
*1109 Lee R. Miller, Jr., New Orleans, Jerold Edward Knoll, Marksville, H. W. Christenberry, Jr., New Orleans, for plaintiffs-appellants.
J. Walter Ward, Jr., Christovich & Kearney, New Orleans, for defendants-appellees.
Before REDMANN, SCHOTT and CIACCIO, JJ.
SCHOTT, Judge.
This is a wrongful death action by the widow and children of Lawrence Thomas Noel who died allegedly as a result of the negligence of defendant, Esgard, Inc., in supplying a defective product for Noel's use and/or failing to warn him of the product's toxicity. After a bench trial the court dismissed plaintiffs' suit. They have appealed and raise issues which are essentially factual, charging that the trial judge committed manifest error in failing to award a judgment to plaintiffs.
Decedent was a pipe fitter employed by Avondale Shipyards on the day of his fatal accident. He was assigned with Charles Audler to repair a valve inside a column underneath a submersible drilling rig being constructed by Avondale. The valve was located 40 feet down into the column. On the day before, the inside of the column had been sprayed with a coating called Safe-T-Kote, manufactured by Esgard. Noel and Audler were both wearing air masks connected to a common hose supplying air from outside the column. The hose somehow became disconnected and both men were overcome by the fumes from the Safe-T-Kote. Other employees of Avondale came to their assistance. They succeeded in hoisting Audler from the column and were in the process of hoisting Noel when the rope slipped or became untied and Noel fell about 15 feet to the bottom of the column. He was then hoisted out of the column and brought to a hospital where he died on October 4, 1973.
Esgard had formulated and manufactured the Safe-T-Kote since the company started in March, 1973. It was designed as a coating for surfaces which would be exposed to salt water and was to be sold to industrial customers only, not consumers. Esgard had arranged with the owner of the rig being constructed by Avondale to use the Safe-T-Kote on a test basis, and it was estimated that 250 gallons would be sufficient to accomplish the coating of all of the columns and related areas under the drilling rig. However, on September 20 Esgard was notified that more of the coating was needed and Esgard's chemist, Frank C. Andres, who had concocted the coating, inspected the area which had been completed. He found that the coating was being applied improperly, in that the thickness of the coating was as much as 30 mm in some places where the proper application would have been no more than 9 mm. In any event, additional Safe-T-Kote was supplied and the application of the coating was completed.
Andres testified: Before the application began he met with the safety man and paint superintendent of Avondale to advise them of the precautions to be taken in connection with the use of the product. He informed them of the necessity for personnel applying the coating to wear air masks and to have the area ventilated to the extent that the air would be completely turned over every two minutes. He also advised them that if the recommended ventilation was provided the coating should dry out from nine to twelve hours after it was applied. He also provided them with written application instructions which contained the following:
"SAFETY PRECAUTIONS:
When working in tankage with any solvent-based product, there is a danger of asphyxiation. Normal precautions are advisable, i.e., use a blower to remove solvent vapor and personnel should have *1110 air masks or self-contained respirators. The solvent system of Safe-T-Kote has a toxicity level of 350 parts per million in air, which is moderately toxic."
Apparently the instructions or recommendations given by Andres were followed when the coating was applied since there is no evidence that the painters encountered any difficulty.[1] According to the paint foreman he understood that no personnel would enter the column until the coating was "cured," that is, dried out so that no fumes were left in the column. He understood that Avondale's safety department would test for the presence of fumes before any personnel were sent down to work in the column.
Nonetheless, Avondale's handling of the situation is difficult to understand. John A. Chantry, Avondale's safety officer, testified that following the painting, the safety department would follow up before other craft work would take place. (Tr. 127B) Charles Audler testified that he checked with the safety man before he went into the tank with Noel "and he said it was all right to go down there." (Tr. 13B) In Chantry's testimony there is the suggestion that he was primarily concerned with inflammable fumes which would prevent welding, and not the sort of non-inflammable fumes emitted by Safe-T-Kote. In any event, Avondale's safety department apparently decided that the men could work in the column if they wore masks so they were unwilling to wait until the coating was "cured."
The evidence shows that as long as the men involved in the rescue of Noel and Audler wore their masks properly they did not encounter any difficulty with the fumes. In their brief plaintiffs state that all the workers who testified, who were exposed to the fumes, were rendered either unconscious or dizzy even though all but one had a full face air mask and an outside source of air. This is inaccurate. John Patten, the first to discover decedent and Audler in trouble in the column had no difficulty until somebody outside turned off his air supply. (Tr. 24) Ernest Whitney had no mask on when he got into trouble (Tr. 54). Ardie Bowen got into trouble when he began to take off his air mask and put it on Noel and Audler to revive them. (Tr. 139-140) Anthony Macaluso had no trouble until Noel slipped from the hoist and fell on him. (Tr. 121B)
In dismissing plaintiff's suit, the trial judge gave no reasons for judgment but it seems clear that he accepted the testimony of Andres as true and concluded that the accident was caused by the negligence of Avondale's personnel in sending the men into this area without previously ascertaining that it was safe, or in supplying the men with defective air masks. He could also have found that the accident was caused by the negligence of Noel and his companion in the use of their air masks. For us to reverse the judgment of the trial court we must find that the court's findings were clearly wrong, but we may not disturb findings of fact which are supported by the record, and we must accept the trial judge's reasonable inferences drawn from those facts. We may not on appeal substitute our own findings of fact or our own inferences simply because we disagree with the trial judge. Canter v. Koehring, 283 So.2d 716 (1973). Thus, we reject the first general argument by plaintiffs that the trial judge committed manifest error, because the record, taken as a whole, does not support this position of plaintiffs.
Next, plaintiffs contend that they are entitled to recover on the theory that Safe-T-Kote was "unreasonably dangerous to normal use" as discussed in Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980). That case held that an escalator was unreasonably *1111 dangerous when a twelve year old passenger got his tennis shoe caught in the machine. In the instant case normal use of this industrial coating included adequate ventilation and the use of air masks in proximity to the material until it was dry and the fumes were gone. The product was not dangerous under such normal use. It caused damage in this case because it was not used properly. Similarly, the other cases cited by plaintiffs in support of this part of their argument are inappropriate. In Chappuis v. Sears, Roebuck & Co., 358 So.2d 926 (La.1978) plaintiff was normally using a hammer when it shattered and a fragment got into his eye and in Weber v. The Fidelity & Casualty Co. of N. Y., 259 La. 599, 250 So.2d 754 (1971), the court found that the normal use of defendant's cattle dip, i.e., in accordance with instructions and with certain precautions, resulted in the death of the cattle because the dip contained an excessive amount of arsenic.
Next, plaintiffs insist that they are entitled to recover because of the inadequacy of the warning contained on the containers of the material and cite Chapuis v. Sears, Roebuck & Co., supra, and Penn v. Inferno Manufacturing Corp., 199 So.2d 210 (La.App. 1st Cir. 1967) in support of their position. In Chapuis the court found that the warning by the hammer manufacturer was inadequate because it failed to disclose that a hammer once chipped should be returned to the manufacturer since a chipped hammer might shatter when put to normal use. In Penn the court found that the manufacturer failed to provide any information to the consumer as to the capacity of sight glass to withstand pressure. However, these cases have no application to the instant case.
First, plaintiffs beg the question that there was no warning. While one of their witnesses stated there were no warnings on the label, Andres testified that each container contained the warning "Use with adequate ventilation." Adequate ventilation was fully defined in the discussions Andres had with Avondale officials and in the application instructions he supplied.
More importantly, the warning on the labels had no connection with Noel's accident. After the coating was removed from the five gallon containers it came in the containers were discarded. Noel's accident resulted from conditions in existence after the paint was applied and the warnings on the containers were irrelevant to the situation. What was relevant was Avondale's failure to follow the recommendations Andres made before sending or allowing its personnel in the freshly coated column.
We conclude that the trial judge's conclusion that Noel's accident was caused not by the negligence of defendant but by that of his co-workers or his supervisory personnel or, perhaps, even of himself was not clearly wrong.
Accordingly, the judgment is affirmed.
AFFIRMED.
NOTES
[1] Ray A. Comeaux testified that he applied the coating in the column on the day before the accident. At first they had difficulty with the fumes because they used airpowered spray guns but this problem was cured when they switched to airless guns. The application instructions recommended the use of airless guns, but did state that conventional equipment may be used. The only other trouble Comeaux had while painting was after a hole was blown in the air hose leading to his mask. (Tr. 7A-8A)