552 So.2d 466 (1989)
Gilroy Percy MERRILL
v.
Donna C. JONES, Mary Lou McCraney, et al.
No. 89-CA-1112.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1989.
*467 Bradford R. Roberts, II, Roberts, Katz, Baudier & Broussard, New Orleans, for plaintiff-appellee.
Richard S. Vale, Blue, Williams & Buckley, Metairie, for defendants-appellants.
Before BARRY, WARD and WILLIAMS, JJ.
WILLIAMS, Judge.
Gilroy Merrill suffered personal injury on February 20, 1987 when the car he was driving struck the St. Claude bridge over the Industrial Canal, which bridge is maintained and operated by the Board of Commissioners of the Port of New Orleans ("the Dock Board"). The Dock Board and its insurer, Pacific Marine Insurance Company, appeal the judgment in favor of plaintiff. We affirm.
On the evening of February 20, 1987, Gilroy Merrill was driving his automobile on St. Claude Avenue when suddenly, and without warning, the bridge was raised. No barricades had descended to signal traffic to stop, and it is disputed whether the warning lights and bells were operating. Mr. Merrill's auto struck the St. Claude Avenue draw bridge over the Industrial Canal.
Merrill was knocked unconscious when his head hit the steering wheel. His lips were severely lacerated and seven teeth were fractured. The trauma to his mouth and jaw caused dislocation of the temporomandibular joint (TMJ) on both the left and right sides. His left knee was seriously damaged when it struck the dash board. He also sustained cervical and lumbar strains. Mr. Merrill was nineteen years old at the time.
The trial court specifically found that Gilroy Merrill was not negligent and that the accident was caused by the sole negligence of the operator of the drawbridge. The Dock Board was found vicariously liable as the employer of the operator. Pursuant to the jury verdict, the trial court awarded plaintiff $76,408.64 in special damages and $118,000 in general damages, for a total amount of $194,408.64.
Defendants argue that the trial court erred in finding that plaintiff was not contributorily negligent, in awarding plaintiff past and future wages, and in awarding plaintiff an excessive amount in general damages.
This case involves factual determinations based on the credibility of all witnesses. It is well established that the findings of the trier of fact will not be disturbed by the reviewing court in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Noel v. Esgard, Inc., 411 So.2d 1108 (La.App. 4th Cir.1982). After a careful review of the testimony, including conclusions of the various medical experts and treating physicians, it is our opinion that there is no manifest error in the findings of the trial court as to liability or damages.
1. Contributory Negligence
On the night of the accident, the St. Claude drawbridge over the Industrial Canal was being operated by Donna Jones, a trainee under the supervision of Mary Lou McRaney.[1] Immediately prior to the accident, Ms. Jones raised the draw bridge. *468 Contrary to standard procedure, Ms. Jones failed to lower barricades to signal traffic to stop before raising the bridge.[2]
Mr. Merrill indicated that he was approximately 20 feet from the raising portion of the bridge when he noticed it was rising. He testified that he was travelling 35-40 miles per hour when he struck the bridge.
Ms. McRaney testified that the warning lights and bells had been activated before the bridge was raised, while Mr. Merrill testified that there were no lights or bells operating. The trial judge had the opportunity to view the witnesses and assess their credibility. We cannot conclude that the court was manifestly erroneous in view of the conflicting testimony, particularly where no other evidence on the issue was presented.
This assignment of error is without merit.
2. Damage Award for Knee Injury and Cervical Strain
The defendants contend that the trial court erred in awarding the plaintiff $50,000 in general damages for the tear of the anterior cruciate ligament of the left knee, the permanent partial disability of the lower left extremity, and for cervical and lumbar strain.
As a result of the accident, plaintiff was forced to undergo arthroscopic surgery, performed by Dr. George Andrews, for reparation of a torn medial meniscus in his left knee. After the surgery, Mr. Merrill was in a straight cast for approximately six weeks and used crutches for approximately three months. In July of 1987, Dr. Andrews discovered that plaintiff's left thigh was approximately one-inch smaller in circumference than the right thigh due to atrophy of the quadricep muscle.
When the pain and problems in Mr. Merrill's knee persisted, he consulted Dr. George Battalora. Dr. Battalora determined that the source of plaintiff's pain was a torn or lax anterior cruciate ligament caused by trauma to the left knee. Though Dr. Battalora recommended major surgery, Mr. Merrill has not submitted to the surgery as of yet due to lack of funds. Mr. Merrill would be required to undergo casting and one re-casting of the leg after surgery. Afterwards, he would be required to undergo rigorous physical therapy to regain strength in his left leg. Follow-up care after surgery would last from six months to a year. Dr. Battalora determined that, after surgery and follow-up care, Mr. Merrill will still have between a twenty and twenty-five percent permanent disability of the lower left extremity.
Mr. Merrill's activity as a sheetrock worker has been completely curtailed since the accident in February of 1987, as well as other activity. He experienced severe pain in his knee due to the accident and continues to experience some pain in his knee. In addition to this pain and partial permanent disability, Mr. Merrill experienced cervical and lumbar pain for many months and continues to feel such discomfort and pain on a recurring basis.
This court has previously allowed an award of $100,000.00 for a knee injury resulting in 10% disability and a neck injury that lasted three to six months at the most. See Wilson v. Cline, 527 So.2d 420 (La. App. 4th Cir.1988), writ den., 532 So.2d 765, writ den. 532 So.2d 771.
In light of the evidence, we cannot conclude that the award of $50,000 for these injuries was manifestly erroneous.
3. Damage Award for Injuries to Teeth and Temporomandibular Joint
The defendants argue that the $68,000 general damage award for injuries to plaintiff's teeth and temporomandibular joint was an abuse of the trial court's discretion. We disagree.
Dr. Gowland testified that eight of Mr. Merrill's front teeth were fractured as a result of the accident; two of these were centrally broken in half so that the nerves were exposed and two had been partially avulsed. Dr. Gowland stated that he had *469 postponed treatment of these teeth for a few weeks after the accident due to swelling of the lips. In addition to two root canals, Mr. Merrill required a treatment bridge for his four front teeth, which necessitated drilling of six teeth for stability of the bridge. Mr. Merrill's treatment bridge must be replaced, and he also needs additional crowns placed on four teeth. Dr. Gowland further testified that the bridge will have to be replaced every ten to fifteen years. Dr. Gowland stated that he could not do this work until the temporomandibular joint is repaired by Dr. Quinn.
Mr. Merrill suffered dislocation of the temporomandibular joint on both the left and right sides. Dr. Quinn recommended arthroscopic surgery to reduce the size of the dislocated disc, to be performed as soon as possible. He stated that he would expect the plaintiff to experience daily pain, varying in intensity, as well as problems in chewing food. The doctor also testified that he would anticipate a 25% permanent disability after the TMJ surgery, and that Mr. Merrill will probably experience discomfort for the remainder of his life, particularly on the left side of his jaw.
In Friedrichs v. State Farm Fire and Casualty Insurance Company, 496 So.2d 496 (La.App. 1st Cir.1986), the trial court awarded $25,000.00 for future pain and suffering to a bicyclist whose suffered TMJ syndrome after being struck by an automobile, despite the jury's failure to award any amount for future pain and suffering. The plaintiff had suffered pain in the jaw, headaches for several days and intermittent locking of her jaw. The court noted that a long and painful history would attend the TMJ disfunction.
In light of the plaintiff's age and the extensive injuries he has sustained, including TMJ disfunction on both sides of the jaw, the need for future surgery to address (though not correct) this problem, fracture of several teeth and two root canals, we cannot conclude that the trial court commited manifest error in the award of $68,000.00 for past and future pain and suffering in relation to these injuries.
4. Loss of Income
As the trial judge points out in his reasons for judgment, Gilroy Merrill has never filed income tax returns. Defendants argue that because of plaintiff's failure to file such returns, his claim for lost wages should be denied. We disagree.
We agree that had plaintiff filed income tax returns determination and/or refutation of his loss of wages might have been a matter of simple mathematics. However, the fact that the plaintiff has not filed such returns cannot inure to the benefit of defendants in order to bar plaintiff's recovery of actual lost wages resulting from the defendant's negligence.
At trial, plaintiff produced only a few checks made payable to him, which he received from Seafresh Seafood. Evidence of plaintiff's past and future lost wages consisted almost entirely of testimony of his brother, Joseph Merrill, his uncle (by marriage), Feldon Ross, and Debra Black, whose husband owns Seafresh Seafoods. The testimony of these witnesses indicates that the vast majority of the work performed by plaintiff involved heavy manual labor.
Joseph Merrill testified that he, Gilroy Merrill and four other brothers worked for Hart Materials from 1981 until the time of the plaintiff's accident. He stated that Gilroy worked as a sheetrock hauler and roof tile hauler. All checks from Hart Materials were made payable to him, and he would in turn cash the checks and pay his brothers in cash. Though Joseph Merrill testified that he received approximately $100,000 from Hart Materials in 1986, checks introduced at trial totalled only $51,657.20. Checks issued in January and February of 1987 total $15,909.38. Joseph testified that he guaranteed his brother Gilroy payment of $185.00 per week, but Gilroy usually earned more. He further testified that Gilroy worked with him every day on a regular basis during the year 1986 and the first two months of 1987, until the accident.
Joseph Merrill further testified that his brother helped him deliver newspapers on a regular weekly basis. He stated that Gilroy received approximately $95.00 each *470 week for this work, $20.00 for deliveries three nights each week and $35.00 for deliveries each Sunday.
Feldon Ross testified that Gilroy Merrill had worked with him in his landscaping business on occassion prior to the accident. He stated that he usually paid Gilroy in cash, and would generally pay him five to six dollars an hour. Mr. Ross further testified that he had been able to employ Gilroy only seldom since the accident, both because of lack of business and due to Gilroy's knee injury. This work involved "passing tools and stuff" and helping around the house.
Debra Black testified that Gilroy Merrill worked for her husband at Seafresh Seafoods primarily on a seasonal basis, during the mullet season from the end of October through December. Mrs. Black stated that Gilroy earned five dollars an hour and was paid in cash or by check. His duties included running the forklift, loading fish and driving a standard transmission truck. Mrs. Black estimated that each load of fish weighed between 150 and 200 pounds. She further testified that, as far as she is aware, Gilroy Merrill has not worked for Seafresh Seafood since the end of 1986.
The testimony of Mr. Merrill's treating physicians as to his ability to work was somewhat conflicting. Dr. Andrews stated that rigorous physical therapy might obviate the need for surgery. If the therapy was successful, Mr. Merrill might be able to return to full duties. The doctor indicated that plaintiff might return to some light duty work. At trial, Dr. Andrews estimated that plaintiff had a ten percent disability.
Dr. Battalora, as noted earlier, testified that plaintiff must undergo surgery in his left knee. He further stated that, following surgery, plaintiff will be required to endure a six-month to one year rehabilitation period, and after surgery plaintiff will have a twenty to twenty-five percent permanent disability in his lower left extremity.
Dr. Melville Wolfson, an expert economist, testified on behalf of Mr. Merrill. Dr. Wolfson determined that plaintiff's lost past wages from February 20, 1987 to November 17, 1988 amounted to $21,875.00, assuming that plaintiff had earned $12,500.00 in the year prior to the accident and that he had not worked since the accident.[3]
Dr. Wolfson calculated two figures for loss of future earnings, assuming in both calculations that Merrill would return to work one year from November of 1988, after medical intervention.[4] In the first set of calculations Dr. Wolfson assumed that plaintiff would be able to earn $7,000 a year and in the second he assumed that plaintiff would earn $10,000 a year. Dr. Wolfson calculated loss of future earnings over a forty year period, assuming that Merrill would work beginning at age twenty-one through the age of sixty-one. The rate of income was adjusted over the forty year period to take into account wage increases and increase in age, as well as Mr. Merrill's disability.[5]
The lowest figure Dr. Wolfson calculated was present day value of $24,000.00 in loss of past wages and $80,000.00 in loss of future wages. We note that these figures assume the veracity of all of the testimony regarding Mr. Merrill's work history.
The trial court noted the difficulty in determining past and future wages, and awarded plaintiff $15,000 for loss of past wages and $30,000 for loss of future wages. The court had the opportunity to view the witnesses and determine their credibility.
We reject the defendant's argument that these amounts are excessive and constitute an abuse of discretion. Though the award *471 of past and future wages might be considered generous, we cannot conclude that the trial court's award is manifestly erroneous.
For the reasons discussed above, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Ms. Jones had been in training for two weeks under Mary Lou McRaney, who in turn had been employed with the Dock Board for approximately six months at the time of the accident in question.
[2] Ms. McRaney testified that prior to starting the procedure to raise the bridge, the operator should manually activate six separate switches to lower six separate gates.
[3] Dr. Wolfson determined that, after taxes, the past wages of $21,500.00 would be reduced to $18,649.00. To arrive at this figure, Dr. Wolfson apparently took into consideration the fact that plaintiff is married and has a child.
[4] Dr. Wolfson apparently relied on Dr. Batalora's diagnosis that plaintiff would require additional surgery with a rehabilitation period of one year to follow.
[5] Dr. Wolfson does not state what percentage of disability he assigned to Mr. Merrill for purposes of these calculations.