775 So.2d 471 (2000)
Sandie EVANS
v.
Louis Phillip NOGUES, III, D.D.S. and Medical Protective Company.
No. 99-CA-2761.
Court of Appeal of Louisiana, Fourth Circuit.
September 13, 2000.
Opinion Vacating Original Decision on Grant of Rehearing November 29, 2000.
Writ Denied March 9, 2001.
*472 Glenn E. Diaz, Carlos A. Zelaya, II, Chalmette, Louisiana, for plaintiff/appellee.
Peter E. Sperling, Mara P. Derme, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, Louisiana, for defendant/appellant (Louisiana's Patients' Compensation Fund).
*473 Court composed of Chief Judge ROBERT J. KLEES, Judge WILLIAM H. BYRNES, III, Judge MICHAEL E. KIRBY.
KIRBY, J.
The defendant, Louisiana Patients' Compensation Fund ("PCF"), appeals the trial court's judgment awarding damages to plaintiff Sandie Evans in this dental malpractice case.
On March 13, 1992, plaintiff's dentist, Dr. Louis Nogues, III, extracted one of plaintiff's wisdom teeth. During this procedure, plaintiff's lingual nerve on the left side was severed. On April 19, 1993, plaintiff underwent surgery to relieve the pain she was experiencing. On May 4, 1994, she underwent another procedure to release the pressure surrounding the lingual nerve. This procedure was repeated again on August 7, 1996. According to plaintiffs oral surgeon, Dr. Michael Block, the plaintiff will probably require this outpatient procedure on the lingual nerve once a year for the rest of her life to relieve the pain caused by the severing of this nerve.
On March 22, 1995, plaintiff filed a dental malpractice suit against Dr. Nogues and his insurer. On March 30, 1995, the defendants filed their answer and a request for jury trial. Trial was set for April 21, 1997 and the defendants paid the required jury deposit on March 3, 1997. On April 11, 1997, plaintiff and Dr. Nogues and his insurer entered into a settlement agreement in which plaintiff reserved her rights to pursue excess damages against the PCF.
On April 18, 1997, plaintiff filed an ex parte motion for continuance of the trial set for April 21, 1997. In that motion, plaintiff stated that opposing counsel had no objection to the continuance. The continuance was granted and the trial was reset for April 7, 1998. PCF denied that it agreed to the continuance, disputing the plaintiff's assertion in the ex parte motion.
According to PCF, it then contacted, by telephone, the minute clerk for the trial court division where trial was scheduled in order to determine if the $1,000.00 jury deposit submitted on March 3, 1997 would be applied as a deposit toward the next trial or refunded. The clerk orally informed PCF that the $1,000.00 deposit would not be refunded because a portion of it had been spent to send notices to prospective jurors for the April 21, 1997 trial.
On April 22, 1998, plaintiff filed a motion for summary judgment, arguing that reasonable minds could not differ that plaintiff's damages exceeded the medical malpractice limit of $500,000.00. The trial court granted the motion. On January 27, 1999, this Court reversed the trial court judgment and remanded the case for trial. Evans v. Nogues, 98-1827 (La.App. 4 Cir. 1/27/99), 726 So.2d 1115, writ denied, 99-0579 (La.4/23/99), 742 So.2d 884.
On July 20, 1999, plaintiff filed a motion to strike the jury, arguing that PCF had failed to timely request a jury trial and post a jury bond or cash deposit. On July 30, 1999, the trial court granted the motion. PCF filed an emergency writ with this Court, seeking review of the trial court's judgment striking the jury. On August 2, 1999, this Court denied PCF's writ application, finding no error in the ruling of the trial court.
On August 3, 1999, a bench trial was held. Following trial, the trial court rendered judgment in favor of plaintiff and against PCF. The trial court found that the plaintiff's damages exceeded $500,000.00 and therefore plaintiff is entitled to the statutory malpractice limit of $500,000.00 in damages and recognition of entitlement to future medical care and related benefits. The trial court ordered the PCF to compensate plaintiff in the amount of $500,000.00 with legal interest from the date of filing the dental malpractice complaint subject to a credit of $100,000.00 for funds previously paid through settlement by Dr. Nogues and his insurer. In this judgment, the trial court also awarded plaintiff all medical expenses sustained from the date of the malpractice, in the amount of $12,001.52, as well as recognition of entitlement to all future medical expenses resulting from the malpractice at issue in this suit.
*474 PCF now appeals the judgment rendered by the trial court on August 3, 1999. In this appeal, the PCF raises two assignments of error: (1) the trial court erred in granting plaintiff's motion to strike the jury and (2) the trial court abused its discretion in awarding excessive damages.
PCF first argues that the timely request for jury trial and cash deposit made by Dr. Nogues and his insurer applied to the entire malpractice proceeding, including the trial on excess damages from the PCF. Therefore, according to PCF, the trial court erred in granting plaintiffs motion to strike the jury.
Plaintiff argues that this Court's denial of PCF's application for an emergency writ from the trial court's granting of the motion to strike the jury is now the law of the case. This Court denied PCF's application, finding no error in the ruling of the trial court.
Under the "law of the case" doctrine, an appellate court ordinarily will not reconsider its own rulings of the law in the same case. Sharkey v. Sterling Drug, Inc., 600 So.2d 701, 705 (La.App. 1 Cir.), writ denied, 605 So.2d 1099, 1100 (La. 1992). However, the law of the case doctrine is a discretionary guide and is not applicable in cases of palpable error or where, if the law of the case doctrine were applied, manifest injustice would occur. Id. at 705.
The right to a trial by jury is fundamental in character and courts should indulge in every presumption against waiver, loss, or forfeiture of that right. Parker v. Rowan Companies, Inc., 628 So.2d 1108, 1110 (La.1991). Therefore, we will address the merits of this issue.
La.C.C.P. art. 1734. 1A states as follows:
When the case has been set for trial, the court may order, in lieu of the bond required in Article 1734, a deposit for costs, which shall be a specific cash amount, and the court shall fix the time for making the deposit, which shall be no later than thirty days prior to trial. The deposit shall include sufficient funds for payment of all costs associated with a jury trial, including juror fees and expenses and charges of the jury commission, clerk of court, and sheriff. The required deposit shall not exceed three hundred dollars per day for each day the court estimates the trial will last. Notice of the fixing of the deposit shall be served on all parties. If the deposit is not timely made, any other party shall have an additional ten days to make the required deposit. Failure to post the cash deposit shall constitute a waiver of a trial by jury. However, no cash deposit shall be required of an applicant for a jury trial under the provisions of this Article if waived or an order is rendered, pursuant to Chapter 5 of Title I of Book IX of the Code of Civil Procedure, permitting the applicant to litigate or continue to litigate without payment of costs in advance or furnishing security therefor.
Included in the Rules of the 34th Judicial District Court for St. Bernard Parish is a rule regarding jury trials. Rule X(E) states, in pertinent part:
Upon the fixing of a trial date for a jury trial by any of the Judges of this Court, the Clerk of Court will take the following action:
* * * * *
2. Advise all counsel in writing at least sixty (60) days before the day of trial, that the party requesting the jury trial will be required to pay the costs of serving the jury venire prior to the issuance of the summons; that the payment must be made thirty (30) days prior to trial; and the amount of payment required. The notice to all counsel, particularly counsel for the parties requesting the jury, must advise them that they will lose the date, as the court will not summon the jury venire if the payment is not made within thirty (30) calendar days prior to the trial. This notice must be in BOLD RED INK.
*475 From the inception to the conclusion of a medical malpractice proceeding, the action is against only the health care provider, and not against the PCF. Williams on Behalf of Williams v. Kushner, 449 So.2d 455 (La.1984). The status of the PCF after a settlement between the plaintiff and the health care provider is more in the nature of a statutory intervenor rather than a party defendant Stuka v. Fleming, 561 So.2d 1371 (La.1990), cert. denied, Louisiana Patient's Compensation Fund v. Stuka, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990).
As a general rule regarding jury trials, our case law states that when one party has properly demanded trial by jury, no other party need make such a request; the matter is then tried by jury as to all parties regarding whom a right to jury trial exists. Alger v. Continental Contractors, Inc., 378 So.2d 556 (La.App. 4 Cir. 1979). In a case involving the issue of how a previous jury trial request by a health care provider affects the PCF, the First Circuit held that once the health care provider settled with the plaintiff, the PCF had to take the proceedings as it found them, including, in that case, accepting the status of the jury trial at the time PCF was served with the settlement proposal. Dodson v. Community Blood Center of Louisiana, 633 So.2d 252, 256 (La.App. 1 Cir.1993), writ denied, 93-3158, 93-3174 (La.3/18/94), 634 So.2d 850, 851
It is undisputed that Dr. Nogues and his insurer timely requested a jury trial and timely paid the required cash deposit in accordance with La. C.C.P. art. 1734.1. PCF argues that because it is not the true party defendant in this proceeding, the plaintiff's settlement with Dr. Nogues and his insurer did not terminate the previous request for a jury trial. We agree.
Regarding the cash deposit for jury trial posted by Dr. Nogues and his insurer, counsel for PCF states that he learned through a telephone conversation with the trial court's minute clerk on March 31, 1998 that a portion of these funds had been used to send notices to prospective jurors for the trial date of April 21, 1997. Counsel for PCF stated in the opposition to the motion to strike the jury that he never received any written notice from the Clerk of Court as to what, if any, additional funds were owed by PCF for jury costs for the August 3, 1999 trial.
The record in this case does not include any written notice from the Clerk of Court for the 34th Judicial District Court to PCF regarding funds owed by PCF for the jury costs for the August 3, 1999 trial. Without any such written notice in the record, we find that the Clerk of Court did not comply with Rule X(E) of the Rules of the 34th Judicial District Court. In his brief, counsel for PCF stated that at the hearing on the motion to strike the jury, the trial judge indicated his belief that there is a conflict between La.C.C.P. art. 1734.1 and Rule X(E) of the Rules of the 34th Judicial District Court, and that La.C.C.P. art. 1734.1 preempts Rule X(E).[1] A reading of that code article and that local rule reveals that a conflict appears to exist between the two as to when a cash deposit for a jury trial must be made. However, there is nothing in La.C.C.P. art. 1734.1 that conflicts with the written notice requirements of Local Rule X(E).
In light of the written notice requirements of Local Rule X(E), the fact that counsel for PCF was told in a telephone conversation with the trial court's minute clerk that some of the previously paid jury deposit had been depleted is irrelevant. PCF was entitled to written notice as to what, if any, funds were required for a jury trial. Having received no such proper notice, we find that the granting of plaintiffs motion to strike the jury was erroneous.
*476 As stated above, this Court denied PCF's application for emergency writs from the granting of the motion to strike the jury, finding no error in the ruling of the trial court. After a thorough review of the record, we find that strict application of the law of the case doctrine in this case is improper because the ruling on PCF's emergency writ application was palpably erroneous and manifest injustice will occur if the doctrine is applied. See Sharkey v. Sterling Drug, Inc., supra.
The trial court's erroneous granting of plaintiff's motion to strike the jury deprived PCF of its fundamental right to a trial by jury. In Gibbons v. New Orleans Public Service, Inc., 442 So.2d 833 (La. App. 4 Cir.1983), trial began before a jury, but the trial judge dismissed the jury on the second day of trial due to the failure of the defendant to pay a second day of jury costs. The trial was completed before the judge alone. The judge rendered his verdict in favor of the plaintiff.
On appeal, the defendant argued, among other things, that the trial judge should not have dismissed the jury. This Court agreed, finding that the trial judge did not have authority to dismiss the jury because of the defendant's failure to pay a second day of jury costs. This Court stated:
By dismissing the jury, without authority, the trial court improperly deprived defendant of its right to a trial by jury. La.C.C.P. art. 1731-1735. Preservation of defendant's right to a jury trial can be accomplished, at this stage, only by remanding the case to the trial court for the purposes of conducting a jury trial. Gibbons v. New Orleans Public Service, Inc., supra at 836.
Similarly, in this case, the only way to preserve PCF's right to a jury trial is to remand this case to the trial court for the purposes of conducting a jury trial.
Accordingly, the judgment of the trial court is annulled and this case is remanded to the trial court with instructions to afford PCF a trial by jury after written notification to PCF of the amount owed for jury costs and the timely depositing of same by PCF.[2]
ANNULLED AND REMANDED.

ON REHEARING GRANTED
BYRNES, Judge.
This Court has decided to grant the plaintiff's request for a rehearing for the following reasons[1]. While written notice of amounts due in connection with a jury trial deposit is ordinarily required under Local Rules of the 34th J.D.C., under the particular facts of this case the Patients Compensation Fund (PCF) waived such notice when it filed a written request to recover expended jury trial deposit funds in spite of the fact that plaintiff knew or should have known such funds would be required for a jury trial. In focusing in our original opinion on the written notice requirement for jury costs, this Court failed to give sufficient weight to the waiver effect of the defendants' request to recover expended jury trial deposit funds, especially when viewed in the context of the burden placed on the plaintiff of relitigating matters that should have been finalized by the writ opinion of this Court.
Ms. Evans has been through a protracted process in the trial court in reliance on the ruling of a previous panel of this Court. This Court is fully cognizant of the fact that the law favors a litigant's right to a jury trial, but it also favors judicial economy, certainty and finality which is the purpose of the law of the case doctrine. After putting Ms. Evans through the trouble and expense of a trial based on the prior writ opinion of this Court, this Court is loathe to put her through more of the same, except where the facts permit no other conclusion. In this case there is no question that Ms. Evans was the victim of malpractice. The only real question is quantum, and we are reviewing an award *477 fixed by the trial judge, not an award that was fixed by what might arguably be described as a runaway jury. Judges are presumed to be unswayed by passion, prejudice, and emotion, and the PCF does not contend otherwise. The PCF does not contend that it was prejudiced by any evidentiary rulings of the trial court. The PCF does not attack the credibility of any of the plaintiffs witnesses. The PCF does not attack the plaintiffs credibility. In weighing the certain injustice of putting the plaintiff through the trouble, expense, and delays of going through a second trial after relying on a ruling of this Court, versus the remote, contingent uncertainty that the defendant might do slightly better with a jury, it would be manifest injustice to Ms. Evans not to follow the law of the case where a reasonable view of the facts permits a finding that the PCF waived its right to a jury trial. Where liability is conceded, the equities clearly favor Ms. Evans. Accordingly, we find that the PCF waived its right to a jury trial. Therefore, we will apply the law of the case and reverse our original decision in this appeal.
Having decided to follow the law of the case and sustain the trial court decision to deny the defendants' request for a jury trial, it now becomes necessary to consider the defendants' argument that the amount awarded by the trial court was excessive. The trial court found that the plaintiffs damages exceeded $500,000.00 and, therefore, awarded the statutory limit of $500,000.00 subject to a credit for funds previously paid in settlement with Dr. Nogues and his insurer.[2]
As a result of the lingual nerve severed by Dr. Nogues on March 13, 1992, plaintiff[3] developed a shocking sensation in the tip of her tongue when she chewed food on the left side of her mouth. Her tongue did not have any sensation on the left side from the tip to the back of her tongue. She also lost sensation along the inside of the left side of her teeth. Subsequently, plaintiff consulted with Dr. Michael S. Block, an oral and maxillofacial surgeon. Hoping for improvement with time, plaintiff avoided surgery until April 19, 1993 when she decided that she could no longer endure the pain and discomfort, which included chewing her tongue on a number of occasions.
On August 18, 1993, Dr. Block performed the surgery. He discovered and removed a neuroma. He made an incision from the hard palate near the second molar to the area over the lingual nerve and then back along the root of the nerve past the area where the wisdom tooth extraction had occurred. He prescribed Vicodin and Demerol for pain, Vistoril for nausea and an antibiotic. The pain in her tongue improved, but in an office visit to Dr. Block on September 22, 1993, she noted the sensation of a swollen tongue and a prickly sensation on the tip of her tongue. On April 18, 1994, plaintiff reported to Dr. Block sensations of swelling in her tongue and stiffness in the middle portion of her tongue. She also had discomfort at the site of the previous surgery.
On May 4, 1994, Dr. Block performed an exploratory surgery on an outpatient basis on the left lingual nerve near the wisdom tooth extraction site. He released scar tissue that was adhering to the adjacent soft tissues and bone. Plaintiff was restricted from duty for four or five days. By May 11, 1994, plaintiffs pain had diminished, but the sensation of a thick tongue persisted.
In September of 1995, plaintiff developed pain symptoms in the center of her tongue unrelated to any motion of the tongue. Dr. Block decided to follow this *478 condition until it became better defined. By July of 1996, plaintiff was complaining that her tongue was feeling "wood like" and she had reached the point where she needed relief from the pain.
On August 7, 1996, Dr. Block performed another procedure to release the scar tissue adhesions from the lingual nerve. Dr. Block testified that he felt a pop when the scar tissue was released from the nerve. Plaintiff was unable to fully open her mouth for a couple of weeks following this surgery. Her discomfort improved following the surgery, during which time Dr. Block noted some popping in the temporo-mandibular joints. At the same time plaintiff complained of tenderness of the muscles of the left side of her face.
On April 9, 1997, plaintiff returned to Dr. Block complaining of a recurrence of symptoms in her tongue. Dr. Block referred her to an internist for steroid therapy, but that mode of treatment did not result in significant relief.
Because of continued complaints, Dr. Block performed another release of scar tissue on March 17, 1998. A week later, plaintiff still had some pricking sensation on the tip of her tongue. By April 14, 1998, plaintiff was experiencing increased pain and Dr. Block recommended what would essentially be a repeat of the procedure he originally performed in 1993. Dr. Block testified that plaintiff will "most probably need procedures performed on a yearly basis for a long time," but he was not sure whether that need would persist for the rest of her life. Dr. Block testified that plaintiff was a cooperative patient and that her reports of subjective pain were confirmed by his examinations and surgical procedures.
Dr. Block referred plaintiff to Dr. Shawky E. Mohamed, a Professor of Prosthodontics at the LSU Medical Center. Dr. Mohamed determined that plaintiffs temporomandibular joint disease (TMD) was caused by clenching her teeth in an effort to avoid biting her tongue. He related this problem to the nerve damage caused by Dr. Nogues. Dr. Mohamed made a soft splint to prevent her from biting her tongue. The soft splint helped prevent further tongue biting, but plaintiff developed severe myofacial pain because of her jaw shifting. Dr. Mohamed instructed plaintiff to sleep on her back, but she cannot sleep in that position. She also was afflicted with frequent headaches attributable to this condition. Dr Mohamed opined that plaintiff will probably require a thinner hard splint which would probably cause plaintiff to reduce the clenching of her teeth which in turn would probably relieve her headaches and facial pain. Dr. Mohamed opined that plaintiff would probably have to wear the splint every night for the rest of her life.
Plaintiff testified as to her understandable pain and discomfort and how this affects her daily life. She cannot chew on the left side. Because of the lack of sensation in her tongue she drools. We can infer that she can never expect to enjoy a meal in the same way she used to be able to do. Moreover, as her symptoms build leading up to each surgical procedure, her speech becomes slurred. She has become self-conscious as a result of the drooling and slurred speech the lisping and the appearance of having her face pulled to one side. For approximately three weeks after each surgery she can anticipate being able to open her jaw only by prying it open with a clothespin. She further testified about her anxiety associated with each approaching surgery, not only because of remembered and anticipated pain, but because of the risk of heart attack and/or death called to her attention by the surgical release form she must execute each time. All of this is compounded by the knowledge that this is a lifelong affliction, requiring annual procedures far into the future, if not for the rest of plaintiffs life.
The defendants in their brief concede the standard of review for general damages under Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-1261 (La. *479 1993), cert. den. sub nom. Maritime Overseas Corp. v. Youn, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994):
[T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
In Reck [v. Stevens, 373 So.2d 498 (La. 1979)], this court disapproved the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. [Citations omitted.] Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. [Citations omitted.]
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
In Youn, 623 So.2d at 1261, the court went on to note that:
The awards are not obviously the result of passion or prejudice, and they bear a reasonable relationship to the elements of the proved damages. Many rational triers of fact could have decided that a lower award is more appropriate, but we cannot conclude from the entirety of the evidence... viewed in the light most favorable to the prevailing party in the trial court, that a rational trier of fact could not have fixed the awards of general damages at the level set by the trial judge or that this is one of those "exceptional cases where such awards are so gross as to be contrary to right reason." Bartholomew v. CNG Producing Co., 832 F.2d 326 (5th Cir.1987).
This Court is well aware that plaintiff's surgical needs are not of the magnitude or gravity of, for example, open-heart surgery. However, the mental anguish, and physical pain and suffering associated with dental procedures are notoriously out of proportion to the injury inflicted. The dread of dental pain is so universally recognized that it is the subject of both comedy and horror alike.[4] In this case, such mental anguish (perhaps one should say, "dental anguish") and physical pain and suffering loom like a dark cloud over the rest of plaintiff's life.
The cases cited by the defendants are not persuasive. In the dental malpractice case of Koslowski v. Sanchez, 576 So.2d 470 (La.1991), the Supreme Court sustained an award of $250,000.00; but in that case the plaintiff was not faced with the *480 prospect of repeated surgical procedures and the physical suffering was limited more to numbness rather than pain. We also note that the malpractice complained of in Koslowski occurred in 1984 and the jury verdict was rendered in 1988. Assuming that Koslowski were exactly comparable to the instant case, inflation alone would justify a substantially greater award today. Even were two cases miraculously identical in every form of injury and suffering, the fact finder would not be limited to precisely identical awards, as there is no exact award where general damages are concerned, only a range from highest to lowest. Finally, we note that when the Supreme Court affirmed the jury award in Koslowski it neither stated nor implied that the $250,000.00 award was the maximum allowable in the discretion of the fact finder.
Magos v. Feerick, 96-686 (La.App. 3 Cir. 12/26/96), 690 So.2d 812, does not involve the prospect of a lifetime of pain and further surgeries.
Tomei v. Bloom Associates, Inc., 75 Mich.App. 661, 255 N.W.2d 727 (Mich.App. 1977), is an outdated case of no precedential value to this Court.
Carter v. Phillips, 365 So.2d 48 (La.App. 3 Cir.1978) is over twenty years old and did not involve the prospect of many years or a lifetime of further surgeries. The plaintiff argued that the award was too low and the defendants argued that it was too high. The appellate court found only that there was no "clear abuse of discretion by the jury..." Carter provides no authority for modifying the award in the instant case.
Herpin v. Witherspoon, 95-370 (La.App. 3 Cir. 11/2/95), 664 So.2d 515, involved a much more optimistic prognosis indicative of no future surgeries.
Willis v. LeCompte, 93-167 (La.App. 3 Cir. 2/9/94), 640 So.2d 304, writ den. 94-0562 (La.4/22/94), 641 So.2d 203, involved no surgical procedures and no numbness. There is no indication that the pain suffered was particularly severe or that it would be permanent. The court noted only that "some" pain persisted at the time of trial. There was no mention of any mental anguish.
In Merrill v. Jones, 552 So.2d 466 (La. App. 4 Cir.1989), as a result of an automobile accident, the plaintiff faced, in addition to a lifetime of probable future discomfort, the prospect of having a dental bridge replaced every ten to fifteen years. Although the appellate opinion discussed the pain the plaintiff suffered as a result of his orthopedic injuries, there was no discussion of his dental suffering. While we may infer the existence of some degree of suffering from the dental injuries and procedures the plaintiff was subjected to, it may well be that the plaintiff in Merrill, a sheet rock worker, was much less sensitive to his dental problems than is Ms. Evans in the instant case. Moreover, the prospect of additional dental work perhaps as seldom as only once every fifteen years would not justify as much anxiety in the Merrill plaintiff as the anxiety Ms. Evans feels at the prospect of surgery, perhaps as frequently as annually. Nor was there any indication that there would be as much risk to the Merrill plaintiff in undergoing such future procedures as Ms. Evans perceived she was exposed to after reading her consent forms.
As the standard "is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the `much discretion' of the trier of fact,"[5] we do not find that the fact finder abused his great and vast discretion in apparently concluding that the effect of Ms. Evans' dental injuries on her were substantially greater than the effect of the injuries suffered by the plaintiff in Merrill were on him.
The issue in Wyble v. Allstate Ins. Co., 581 So.2d 325 (La.App. 3 Cir.1991) was *481 whether the jury award was so low ($25,000.00) as to constitute an abuse of discretion. The appellate court found no abuse of discretion. As the plaintiff in Wyble suffered both orthopedic and dental injuries, the award in that case strikes this Court as being abusively low.
We have reviewed the cases cited by the defendants in order to show that none would cause this Court to modify the judgment of the trial court. Moreover, as we have found no abuse of the much discretion afforded to the fact finder in the fixing of general damage awards, we are admonished that it is inappropriate to resort to a survey of prior awards. Youn, supra. The cases cited by the PCF were discussed above for the purpose of distinguishing them. The discussion was, therefore, not intended to represent a "resort to a survey of prior awards." There is no evidence that the award is the result of passion or prejudice and the defendants do not even argue that it is. The award, albeit generous, does not offend right reason. The defendants conclude their quantum argument by referring to the cases discussed above in this opinion: "The above awards represent reasonable and fair compensation for the type of injury Ms. Evans incurred." In effect, the defendants sum up their position with the contention that other reasonable fact finders could have awarded less. But the fact that a lesser award would not be abusively low does not mean that the award to Ms. Evans is abusively high. Defendants' argument is not persuasive.
For the foregoing reasons, we vacate the original decision of this Court and affirm the judgment of the trial court.
REHEARING GRANTED: ORIGINAL DECISION VACATED; JUDGMENT OF THE TRIAL COURT AFFIRMED.
KIRBY, J., dissents.
KIRBY, J. Dissenting.
I would deny the plaintiffs rehearing application. I would annul the judgment of the trial court and remand this case for a jury trial for the reasons assigned in this Court's original opinion.
NOTES
[1] We note that the transcript of the July 30, 1999 hearing on the motion to strike the jury is attached to PCF's brief, but it is not included in this appeal record. However, it is undisputed that the trial judge's opinion is that a conflict exists between La.C.C.P. art. 1734.1 and Local Rule X(E) and that the state law prevails.
[2] Because we are annulling the trial court's judgment and remanding this case for a jury trial, we need not address PCF's argument regarding excessive damages.
[1] We adopt the facts and procedural history of this case as set forth in our original opinion.
[2] Medical expenses of $12,001.52 as well as recognition of entitlement to all future medical expenses resulting from the malpractice were also awarded in the trial court judgment. Defendants do not challenge these special damages on this appeal.
[3] The only live testimony in the trial court was that of the plaintiff. The testimony of Drs. Block and Mohamed was presented in deposition form.
[4] For example, in the movie "Marathon Man" the villain inflicts dental torture on his victims.
[5] Youn, supra