917 So.2d 454 (2005)
BANK ONE, NATIONAL ASSOCIATION, as Trustee
v.
Marjorie Madere VELTEN aka Marjorie Madere Hoffman Velten.
No. 2004-CA-2001.
Court of Appeal of Louisiana, Fourth Circuit.
August 17, 2005.
Rehearing Denied December 9, 2005.
*456 Charles H. Heck, Jr. Dean Morris, L.L.P. Monroe, Louisiana for Plaintiff/Appellee.
Patrick D. Breeden, New Orleans, Louisiana, for Defendant/Appellant.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY III, Judge MICHAEL E. KIRBY).
JAMES F. MCKAY III, Judge.
The defendant/appellant, Marjorie Madere Velten a/k/a Marjorie Madere Hoffman Velten (Marjorie Velten), appeals the district court's judgment granting a partial summary judgment in favor of the plaintiff/appellee, Bank One, National Association, As Trustee (Bank One). The trial court held that there were no genuine issues of material fact concerning the defendant's liability on the promissory note and security agreements and that Bank One was entitled to enforce its security right in accordance with Louisiana Law. Furthermore, the trial court held that the points and fees, as evidenced by the disclosure statement, did not exceed the statutory eight percent (8%) of the total loan amount and therefore there was no genuine issue of material fact regarding the question of "high rate loan" pursuant to the Truth in Lending Act as amended by the Home Ownership and Equity Loan Protection Act (HOEPA), 15 U.S.C.A. et seq. Lastly, the trial court held that Bank One was not required to make any special disclosures pursuant to the act, and consequently Marjorie Velten does not receive the three (3) year rescission window. We agree.

FACTS AND PROCEDURAL HISTORY
This case evolves from the purchase and foreclosure proceeding against Marjorie Velten referencing the subject residence located at 5524 Canal Boulevard. On December 13, 1999, the appellant initiated a promissory note, recorded as instrument No. 558526, in favor of Aegis Mortgage Corporation d/b/a/ UC Lending (Aegis) in the amount of $91,300.00, interest thereon at 9.363% per annum, and guaranteed by an act of mortgage securing property owned by the appellant. The appellant, made payments on this loan for approximately 1½ years before defaulting by failing to pay her mortgage installments.[1] On *457 April 22, 2002, Bank One[2] filed a petition for executory process seeking to enforce the aforementioned note and mortgage agreement based on the appellant's default. On July 16, 2002, almost two and one half years after the initial loan was perfected, Marjorie Velten, through her attorney, sent a letter to Bank One advising that she was rescinding her loan. She advanced a defense alleging that the loan was promulgated pursuant to the Homeowner Equal Protection Act (HOEPA) 15 U.S.C.A. 1602,[3] and argued that she had not received specific disclosures, as required by statute. She further argued that the applicable Act extended the time limit for rescission up to three years from the date that the loan originated. In response to this letter Bank One advised the appellant that they would not rescind the loan and would proceed with their foreclosure action.
On July 26, 2002, the appellant filed a petition for an order suspending the seizure and sale order and/or preliminary injunction and/or permanent injunction and/or damages. The hearing was set two days before the scheduled Sheriff's sale of the subject property. The trial court granted the preliminary injunction thereby canceling the Sheriff's sale of this property. Bank One took a writ to this Court in case No.2002-C-2020, which we dismissed as untimely.[4] On December 5, 2002, pursuant to L.C.C.P art. 2644, Bank One converted the original executory proceeding to an ordinary proceeding. On November 4, 2003, Bank One filed a motion for summary judgment. On February 19, 2004, the appellant filed an opposition. On June 18, 2004, the matter was heard and a decision was rendered in favor of Bank One granting their motion for summary judgment, finding that no genuine issues of material fact were in dispute, and that the subject loan was not a HOEPA loan.

ASSIGNMENTS OF ERROR
The appellant advances numerous issues for review asserting that the trial court erred in granting summary judgment in favor of Bank One. The appellant asserts that the law of the case doctrine applies to this matter. We disagree with this assertion. Additionally, the other issues asserted by the appellant can be aggregated into one, that being whether this is a loan pursuant to HOEPA. The trial court held that it was not a HOEPA loan and we can find no reason in the record to disagree with this holding.

STANDARD OF REVIEW
Appellate courts review the granting of summary judgment de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480, p. 2 (La.4/11/94), 634 So.2d 1180, 1182; Alexis v. Southwood Ltd. Partnership, XXXX-XXXX, p. 2 (La.App. 4 Cir. 7/18/01), 792 So.2d 100, 101. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. Two Feathers Enterprises, Inc. v. First National Bank of Commerce, XX-XXXX-XXXX p. 3 (La.App. 4 Cir. 10/14/98), 720 So.2d 398, 400. This procedure is now favored and shall be construed to accomplish those ends. La. C.C.P. art. 966 A(2). A summary judgment *458 shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. If the court finds that a genuine issue of material fact exists, summary judgment must be rejected. Oakley v. Thebault, 96-0937, p. 3 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490. The burden does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist. Id. At that point, the party opposing the motion must "make a showing sufficient to establish existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial." La. C.C.P. art. 966(C).

DISCUSSION
The appellant argues that the law of the case doctrine applies to the instant matter. We disagree.
Although the appellant fails to make a clear argument for this assignment of error, it appears that the appellant's argument is based on the fact that the trial court initially issued a preliminary injunction to thwart a sheriff's sale of the subject property. The appellee filed a writ with this Court, which we dismissed as untimely, never addressing the merits of the case.[5] Consequently, the law of the case doctrine argument cannot hold, as a preliminary injunction is not a final judgment, but merely an interlocutory order. Key to this issue is the fact, as previously noted that Bank One had converted the matter from an executory proceeding to an ordinary proceeding and obtained a partial summary judgment which in the instant matter is a final judgment.
A writ of preliminary injunction is essentially an interlocutory order issued in a summary proceeding incidental to the main demand for permanent injunctive relief. It is designed to and serves the purpose of preventing irreparable harm by preserving the status quo between the parties pending a determination on the merits of the controversy. Bally's Louisiana, Inc. v. Louisiana Gaming Control Board, 99-2617, p. 7 (La.App. 1 Cir. 1/31/01), 807 So.2d 257, 263; Freeman v. Treen, 442 So.2d 757, 763 (La.App. 1 Cir.1983). The principal demand, as opposed to the injunction, is determined on its merits only after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain the injunction may touch upon or decide issues regarding the merits. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488, 494 (La.1979).
The law of the case doctrine refers to "(a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate court rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case." Petition of Sewerage and Water Bd. of New Orleans, 278 So.2d 81, 83 (La.1973); Louisiana Land and Exploration Co. v. Verdin, 95-2579, pp. 3-4 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, 65. This doctrine "may bar redetermination of a question of law or a mixed question of law and fact during the course of a judicial proceeding." 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure, § 6.7 (1999). Thus, the law of the case doctrine is the proper procedural principle, as opposed to res judicata, for *459 describing the relationship between prior judgments by trial and appellate courts rendered within the same case. Posey v. Smith, 453 So.2d 1016 (La.App. 3 Cir. 1984). The policy reasons behind this doctrine include: (i) avoiding relitigation of the same issue, (ii) promoting consistency of result in the same litigation, and (iii) promoting efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 330, 256 So.2d 105, 107 (1971).
Unlike the statutory doctrine of res judicata, the jurisprudential doctrine of law of the case is a discretionary guide that will not be applied inflexibly. "Argument is barred where there is merely doubt as to the correctness of the former holding, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice." Petition of Sewerage and Water Bd., 278 So.2d at 83. In addition to the latter exception for palpable error, the jurisprudence has recognized two other contexts in which this discretionary doctrine will not be applied. First, it will not be applied to "supplant the Code of Civil Procedure provision which clearly permits a reconsideration of the overruling of peremptory exceptions." Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 1094, 262 So.2d 328, 332-33; Landry v. Blaise, Inc., XXXX-XXXX (La.App. 4 Cir. 10/23/02), 829 So.2d 661, 666. Second, it will not be applied when the underlying, operative facts upon which the court's prior decision was based have changed. Morrison v. C.A. Guidry Produce, XXXX-XXXX (La.App. 3 Cir. 10/01/02), 856 So.2d 1222, 1226-27. Under the "law of the case" doctrine, an appellate court ordinarily will not reconsider its own rulings of the law in the same case. See Liberty Bank and Trust Company v. Dapremont, XXXX-XXXX (La.App. 4 Cir. 2/11/ 03), 844 So.2d 877, (see p. 892); Evans v. Nogues, 99-2761, p. 4 (La.App. 4 Cir. 9/13/00), 775 So.2d 471, 474; Sharkey v. Sterling Drug, Inc., 600 So.2d 701, 705 (La.App. 1 Cir.). Clearly, there was no permanent injunction in this matter, nor was there a "final decree" as to the merits of any particular assertion made by the appellant. Moreover, a preliminary injunction is a summary proceeding and merely requires a prima facie showing of a good chance to prevail on the merits. Mary Moe, L.L.C., v. Louisiana Bd. Of Ethics, 03-2220, (La.4/14/04), 875 So.2d 22. Accordingly, we find no merit to the appellant's assertion regarding the law of the case doctrine.
In the appellant's aggregated assignment of error, she asserts that the trial court erred in holding that the loan in question was not subject to HOEPA requirements.
The key issue for this Court to review is whether or not a loan, originated by AEGIS on December 13, 1999, was a "High Rate Loan", or a loan pursuant to HOEPA. The first step in this analysis is to review the settlement statement at closing, as defined by 15 U.S.C.A. 1602, and determining whether the "points and fees" payable by the consumer at or before closing, exceed the greater of eight percent (8%) of the total loan amount.

TOTAL LOAN AMOUNT
The appellant argues that the "points and fees" exceed 8% of the total loan amount, which would trigger the implementation of the provisions of HOEPA. She asserts that Bank One miscalculated the amount, thereby avoiding the provisions of the statute.
The determination of whether the loan in fact falls within the province of HOEPA hinges upon the calculation of the "total points and fees," as well as the "total *460 amount of the loan." See 15 U.S.C. § 1602(aa)(1); Johnson v. Know Financial Group, 2004 WL 1179335 (E.D.Pa.5/26/2004). According to Johnson, which we find presents a basic guideline to determine the "total loan amount", the court must first determine the "amount financed" as set forth by 12 C.F.R. § 226.18, which states:
§ 226.18 Content of disclosures.
For each transaction, the creditor shall disclose the following information as applicable:
(a) Creditor. The identity of the creditor making the disclosures.
(b) Amount financed. The amount financed, using that term, and a brief description such as the amount of credit provided to you or on your behalf. The amount finances is calculated by:
(1) Determining the principal loan amount or cash price (subtracting any down payment);
(2) Adding any other amounts that are financed by the creditor and are not part of the finance charge; and
(3) Subtracting any prepaid finance charge.
As evidenced by the settlement statement, the appellant's principal loan amount was ninety-one thousand three hundred dollars ($91,300.00).[6] To this amount, the court must add amounts financed by the creditor, which are not part of the finance charge. According to the settlement statement, there were no such amounts, as Aegis financed the entire amount of the loan, including the finance charges. Next the court must deduct any "pre-paid finance charge." Pursuant to 12 C.F.R. § 226.2(a)(23), defines "pre-paid finance charges" as "any finance charges paid separately in cash or by check before or at consummation of a transaction, or withheld from proceeds of the credit at any time." In the case sub judice, finance charges were "withheld from the credit," which was extended. The total finance charge was $6,694.99. Deducting the finance charges from the "principal loan amount" leaves an amount of $84,605.01, as the total amount financed.
Next, pursuant to Johnson, in order to arrive at the "total loan amount", the court must deduct from the "amount finance" any cost listed in 12 C.F.R. 226.32(b)(1)(iii). This statute sets forth:
"(iii) All items listed in § 226.4(c)(7) (other than amounts held for future payment of taxes) unless the charge is reasonable, the creditor receives no direct or indirect compensation in connection with the charge, and the charge is not paid to an affiliate of the creditor ..."
Consequently, the deduction must include only those items listed in § 226.4(c)(7),[7] which are unreasonable, or *461 paid to the creditor or an affiliate of the creditor. A review of the record reveals that the appellant has never asserted that any charge contained on the settlement statement was "unreasonable". In fact the affidavit of Irl Silverstein, which was an exhibit in the memorandum in support of the motion for summary judgment, addressed the issue of the "Doc Prep to MRG." The "Doc Prep" stands for document preparation fees charged by and paid to Middleberg, Riddle, and Gianna (MRG), 2323 Bryan Street, Suite 1000, Dallas, Texas 75201 for preparation of loan related documents. The record reflects that the appellant never challenged this charge either the truth therein as to MRG's relationship to the appellants or for the reasonableness of this charge. Consequently, the above fees can only be deducted from the "amount finance" if they are unreasonable or paid directly or indirectly to AEGIS or an affiliate. Thus, no charges under 12 C.F.R. 226.32(b)(1)(iii), or 12 C.F.R. 226.4(c)(7) are deducted from the amount financed. Therefore, the "total loan amount" is the same as the "financed amount", or $84,605.01.[8]

POINTS AND FEES
To resolve the issue of whether the subject loan is an HOEPA loan, it is essential to determine whether the "points and fees" exceed 8% of the "total loan amount." To determine what charges on the settlement statement are "points and fees", the Court must follow 15 U.S.C.A. 1602(aa)(4), which states:
For the purposes of paragraph (1)(B), points and fees shall include 
(A) all items included in the finance charge, except interest or the time-price differential;
(B) all compensation paid to mortgage brokers;
(C) each of the charges listed in section 1605(E) of this title (except escrow for future payment of taxes), unless 
(i) the charge is reasonable;
(ii) the creditor receives no direct or indirect compensation; and
(iii) the charge is paid to a third party unaffiliated with the creditor;
Also, in order for the Court to make this determination, it must look at the definition of "finance charge" as defined in 15 U.S.C.A. 1605. The statute provides:
"Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction. The finance charge shall not include fees and amounts imposed by third party closing agents (including settlement agents, attorneys, and escrow and title companies) if the creditor does not require the imposition of the charges or the services provided and does not retain the charges. Examples of charges which are included in the financial charge include any of the following types of charges which are applicable:
(1) Interest, time price differential, and any amount payable under a point, discount or other system of additional charges.

*462 (2) Service or carrying charge.
(3) Loan fee, finder's fee, or similar charge.
(4) Fee for an investigation or credit report...."
15 U.S.C.A. 1605 also provides exemptions from the computation of finance charges in sections "d" and "e", which provide:
(d) Items exempted from computation of finance charges in all credit transactions.
If any of the following items is itemized and disclosed in accordance with the regulations of the Board in connection with any transaction, then the creditor need not include that item in the computation of the finance charge with respect to that transaction:
(1) Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction.
(2) The premium payable for any insurance in lieu of perfecting any security interest otherwise required by creditor in connection with the transaction, if the premium does not exceed the fees and charges described in paragraph (1) which would otherwise be payable...
(e) Items exempted from computation of finance charge in extensions of credit secured by an interest in real property:
(1) Fees or premiums for title examination, title insurance, or similar purposes.
(2) Fees for preparation of loan-related documents;
(3) Escrows for future payments of taxes and insurance.
(4) Fees for notarizing deeds and other documents.
(5) Appraisal fee, including fees related to any pest infestation or flood hazard inspections conducted.
(6) Credit reports.
In consideration of the above factors, this Court has to determine what charges on the settlement statement, if any, are "financial charges" and what charges are "exempted".
On the settlement statement, there is listed a charge for "Loan discount of 6.47 to AEGIS MORTGAGE CORP" in the amount of $6,254.99. It is Bank One's position that this is a "points and fees" charge consistent with the above act and therefore, a determinative factor as to whether this particular loan is a HOEPA loan.
A second charge is listed as "Appraisal fee to Nick Leogio" in the amount of $375.00. Clearly, pursuant to 15 U.S.C.A. 1605(e)(5) this is an appraisal fee that is exempted. It is also exempt pursuant to 15 U.S.C.A. 1605(4)(c).
Another charge listed is the "Processing fee to Aegis" in the amount of $425.00. This point is not in contention because Bank One submits that this should be considered as a factor.
Also listed is a charge for "Tax Service Fee to Aegis" in the amount of $97.00. Bank One submits that this is a financial charge to be properly considered.
The next charge to consider is "Doc Prep to MRG" which is a $100.00 charge for document preparation by Middleberg, Riddle & Gianna. This is not a financial charge as documents specifically related to loan preparation are excluded pursuant to 15 U.S.C.A. 1605(e)(2).
Another charge in question is the "Flood Cert to Aegis" in the amount of $18.00, *463 which is specifically exempt by § 1605(e)(5).
There are other charges which appellant disputes that can be summarily discounted as exempt: "Fair Plan Insurance," exempt under § 1602(aa)(4); "Title Charges," exempt under § 1605[9]; and "Government Recording and Transfer Charges," exempt under § 1605(d)(1).
From the above analysis, it can be concluded that the total amount which can be conclusively considered to be "financial charges" reach a total amount of $6,694.99.[10] In summation the "total amount loaned" was $84,605.01, which is $91,300.00 (total amount listed on Settlement Statement) minus "points and fee" in the amount of $6,694.99. This amount is clearly less than 8% of $84,605.01, and the loan clearly does not fall under the ambit of a "high interest loan," as contemplated in Title 15, and the "special disclosures" pursuant to HOEPA are not required in the instant matter. The trial court did not err in its calculations and in concluding that this loan was not a HOEPA loan.
Based on the law and the evidence before this Court, we find no error in the judgment of the trial court in its judgment holding that there are no genuine issues of material fact in dispute concerning the application of Title 15 U.S.C.A. 1601, et seq. Therefore, we affirm the judgment of the trial court granting Bank One's partial motion for summary judgment.
AFFIRMED.
NOTES
[1] Appellant failed to reinstate or pay off her loan.
[2] Bank One became an assignee of AEGIS
[3] This is an amendment to the Truth In Lending Act (TILA), 15 U.S.C.A. 1601, 1639, 12 CFR 226.1, 226.30, 226.32 and 226.34: Code Federal Regulations 81438, December 26m, 2000 and the National Consumer Law Center, Truth in Lending (4 ed. 1999, pgs. 597-603)
[4] Note that this Court did not dismiss this writ on its merits but only based on procedure.
[5] No.2002-2020.
[6] All of the closing charges were financed and included in the principal balance.
[7] 12 C.F.R. § 226.4(c) Charges excluded from the financial charge. The following charges are not finance charges.

Sub. § (7) Real-estate related fees. The following fees in a transaction secured by real property or in a residential mortgage transaction, if the fees are bona fide and reasonable in the amount.
(i) Fees for title examination, abstract of title, title insurance, property survey, and similar purposes;
(ii) Fees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents;
(iii) Notary and credit report fees;
(iv) Property appraisal fees or fees for inspections to assess the value or condition of the property if the service is performed prior to closing, including fees related to pest infestation or flood hazard determinations;
(v) Amounts required to be paid into escrow or trustee accounts if the amounts would not otherwise be included in the finance charge.
[8] 8% of this amount is $6,768.40.
[9] "Abstract or title search to Irl R. Silverstein," $200.00; "Title Examination to Irl R. Silverstein," $200.00; "Notary fees to Irl R. Silverstein," $200.00; "Title Insurance to Irl R. Silverstein," $311.00.
[10] Loan discount 6.74% to AEGIS, $6,154.99; Processing fee to AEGIS, $425.00; Tax service fee to AEGIS, $97.00; Flood cert. to AEGIS $18.00.