JOAN BERNARD ARMSTRONG, Chief Judge.
 

 11 Plaintiffs-appellants, William R. Daigre, IV, individually and as the administrator of the estates of his parents, Elve-ta Daigre and the tort victim, William R, Daigre, III, along with his brothers, Richard Daigre and Scott Daigre, appeal a judgment on the pleadings, dismissing with prejudice their claims against Bowie Lumber Associates, Inc. (“Bowie”), Foret Farms, Inc. (“Foret”), and Louisiana Farm Bureau Casualty Insurance Company (Foret’s insurer). For the reasons that follow, we affirm the judgment of the trial court.
 

 The litigation arises out of the untimely death of William R. Daigre, III, from a single-vehicle accident in which his tractor-trailer left the road on a rural highway and rolled down a steep incline. The plaintiffs allege that the defendants were responsible for the hazard created by the steep incline either by having conducted farming operations within the highway right of way next to the shoulder of the road or by having allowed or failed to prevent the hazard created by the farming operations, depending on the different responsibilities of the different defendants. The plaintiffs allege that the farming operations cut away the “foreslope” adjacent to the shoulder, transforming what was and what was | ¡.supposed to be a “shallow uniform downgrade” into a “drastic drop off,” which caused the decedent’s tragic death.
 

 The original petition filed on March 4, 2004, by the plaintiffs Elveta Daigre, individually and as the administratrix of the estate of her late husband, William R. Daigre, III, along with her sons, William R. Daigre, IV, Richard Daigre and Scott Daigre, named as defendants International Truck Engine Corporation (“International”), Fort Worth Fabrication, Inc. (“Fort Worth”), the Louisiana Department of Transportation and Development (“DOTD”) and Bowie.
 

 
 *507
 
 In their First Amended and Supplemental Petition filed on November 5, 2004, the plaintiffs substituted William R. Daigre, IV, for Elveta Daigre as the administratrix of the estate of the decedent, in connection with the survival claims of the tort victim because Ms. Daigre died some time after the filing of the original petition. William R. Daigre, IV was also substituted for Elveta Daigre as the administrator of her estate in connection with her personal wrongful death claims for the death of her husband.
 

 On October 12, 2006, the plaintiffs filed a motion to dismiss their claims against International on the basis of a settlement with that defendant, pursuant to which the trial court signed an order of dismissal with prejudice on October 17, 2006. The terms of this settlement are not part of the record.
 

 In their Second Amended and Supplemental Petition, filed on March 3, 2007, the plaintiffs named as additional defendants, Foret and Louisiana Farm Bureau Casualty Insurance Company as Foret’s liability insurer.
 

 On April 25, 2007, the plaintiffs filed a motion of partial dismissal to dismiss their claims against Fort Worth on the basis of a settlement with that |sdefendant, pursuant to which the trial court signed an order of dismissal with prejudice on May 7, 2007. The terms of this settlement are not part of the record.
 

 On November 16, 2009, the trial court signed a consent judgment confirming a settlement between the plaintiffs and the DOTD in the sum of $450,000.
 

 Bowie owned the land where the accident occurred. It had granted a right of way to the State of Louisiana for the construction of La. Hwy. 307 and had further granted a sugar cane farming lease for the adjoining land to Raceland Raw Sugar (“Raceland”) which in turn subleased the land to Foret. Under the terms of the sublease, Foret agreed to assume the Raceland lease terms and further agreed to defend Bowie from third-party claims.
 

 Accordingly, Bowie filed a third-party demand against Foret. When Foret’s insurer, Louisiana Farm Bureau Casualty Insurance Company, finally agreed to assume the defense of Bowie, Bowie dismissed its third-party demand against Foret.
 

 Bowie, as owner, and Foret, as lessee, pled the applicability of La. R.S. 9:2800.4, which provides immunity to owners and lessees of forest or farm land from damage claims asserted by those not lawfully on the property, with the exception of damage caused by the intentional acts or gross negligence of the owner or lessee.
 

 The defendants moved for judgment on the pleadings. On 25 February 2010, Judge James Williams, sitting pro tem-pore, granted the defendants judgment on the pleadings, subject to plaintiffs’ right to amend within ten days to allege the inapplicability of the statutory immunity. The plaintiffs filed a third and a fourth ^supplemental and amending petitions, alleging facts that they contend deprive the defendants of the immunity provided by La. R.S. 9:2800.4.
 

 Thereafter, Bowie and Foret renewed their Motion for Judgment on the Pleadings and also filed a Peremptory Exception of Res Judicata, contending that the applicability of La. R.S. 9:2800.4 had already been adjudicated and/or was the law of the case.
 

 On June 21, 2010, Judge Paulette Irons granted the defendants’ motion for judgment on the pleadings, but denied their peremptory exception of res judicata, and dismissed the plaintiffs claims against the appellants with prejudice.
 

 
 *508
 
 In her written reasons for judgment annexed to the second judgment on the pleadings rendered on June 21, 2010, the district judge set forth the basic facts of the case succinctly as follows:
 

 Bowie is the landowner immediately adjacent to the highway and had leased the property for sugar cane farming operations to Foret. Bowie had also granted a 60 ft. right of way to DOTD in order to service the highway. The right of way extended 30 ft. from the centerline of the highway, and the lanes are approximately 10 ft. wide with a 2-3 ft. shoulder, leaving approximately 17-18 ft. beyond the shoulder under the right of way. In that 17-18 ft. area, DOTD had designed a “foreslope” area that allows for a gradual decline onto the farming property. However, that fores-lope was removed by the defendants Bowie and Foret, allegedly to allow more area for farming operations. Plaintiffs further allege that this created a drastic drop off that caused the tractor to roll over.
 

 The parties have not disputed these facts for purposes of the review of the Judgment on the Pleadings. Therefore, we will proceed based upon these facts.
 

 The case boils down to three key issues: (1) Did the district court err in concluding that the place where the accident occurred was farmland within the intendment of La. R.S. 9:2800.4? (2) Did the district court err, based on the record 15before it, pursuant to a motion for judgment on the pleadings, in concluding that the decedent was not “lawfully” on the property owned or leased by the defendants within the in-tendment of La. R.S. 9:2800.4? (3) Did the district court err in concluding that the decedent was not injured as a result of an “intentional act” or the “gross negligence” of the ownersAessees within the intendment of La. R.S. 9:2800.4?
 

 La. C.C.P. art. 965, which provides for the motion for judgment on the pleadings, states in pertinent part that:
 

 For purposes of [a motion for judgment on the pleadings], all allegations of fact in the adverse party’s pleadings shall be considered true.
 

 In considering a motion for judgment on the pleadings, nothing beyond the pleadings may be considered; supporting evidence may not be considered.
 
 Gibbens v. Wendy’s Foods, Inc.,
 
 31,487, pp.
 
 3-4
 
 (La.App. 2 Cir. 1/20/99), 729 So.2d 629, 631-632, citing,
 
 inter alia,
 
 this Court’s opinion in
 
 Thomas v. Allstate Ins. Co.,
 
 367 So.2d 1300, 1301 (La.App. 4th Cir.1979). A motion for judgment on the pleadings neither requires nor permits supporting affidavits, and on such a motion a trial court is not at liberty to consider any matter not within the pleadings.
 
 Hygrade Inv., Inc. v. Leonard,
 
 197 So.2d 702, 704 (La.App. 4 Cir.1967).
 

 In the Memorandum filed by the plaintiffs in opposition to the defendants’ first motion for judgment on the pleadings, the plaintiff did not object to the consideration of matters beyond the face of the pleadings. In fact, the plaintiffs quoted extensively from the deposition of Rodney Foret, in which he appeared as Foret’s corporate representative.
 

 |fiNor did the plaintiffs object to the consideration of matters beyond the face of the pleadings in their Supplemental Memorandum filed in opposition to the defendants’ motion for judgment on the pleadings.
 

 However, in the final Memorandum filed by the plaintiffs in opposition to the defendants’ second motion for judgment on the pleadings, the plaintiffs specifically argued that the pleadings govern and the allegations in the plaintiffs pleadings must be taken as true, citing La. C.C.P. art. 965
 
 *509
 
 and
 
 Hygrade Investments, supra.
 
 This is significant, because it is the defendants’ second motion for judgment on the pleadings that resulted in the judgment now before this Court. Therefore, it cannot be said that the plaintiffs waived any objections they might have had to the district court’s consideration of evidence outside of and in contradiction of their pleadings.
 

 The district judge in her written reasons for judgment found that while
 
 res judicata
 
 did not apply, the law of the case doctrine did. The district judge concluded that:
 

 As this court finds that La. R.S. 9:2800.4 is controlling, the rules of the game under the law of the case doctrine are that the plaintiffs must allege new facts that show Mr. Daigre’s departure from the roadway was not unlawful or that the defendants’ removal of the foreslope was not an intentional act or gross negligence on the part of the defendants.
 

 The first judgment on the pleadings which led to the plaintiffs’ Third and Fourth Supplemental and Amended Petitions, by relying on La. R.S. 9:2800.4, in effect, determined that when the decedent left the roadway and entered upon the property being farmed by Foret, he entered upon the land “unlawfully” as the law requires him to drive upon the roadway. This interpretation of the first judgment on the pleadings is borne out by the transcript of the January 15, 2010 hearing in 17the district court which resulted in the first judgment on the pleadings, more particularly the following exchange between Mr. Andrew Plauche, defense counsel, and the district judge:
 

 Mr. PLAUCHE:
 

 And, Your Honor, the suggestion is based upon we need to know what the rules are for this third round of this litigation. I say that rules are the statute says that the farm is only liable for gross negligence or intentional acts. If that is the rule, then he wants to amend to bring that in. So my suggestion is you grant it and then give him leave to file the amendment, so we find out what the rules are.
 

 THE COURT:
 

 Okay. I’m going to grant the motion for leave to ... amend the petition to amend it to the manner in which you have indicated.
 

 Based on the foregoing exchange between defense counsel and the district judge, it is clear that the district judge was granting the plaintiffs leave to amend in order to permit them to allege facts showing that the defendants were guilty of either an intentional act or gross negligence. However, this was based on the dual determination by the district judge that the location where the accident occurred was “farmland” and that the decedent was not “lawfully” on that land a,t the time the accident occurred.
 

 The essence of the district judge’s reasoning in reaching the conclusion that the decedent was not lawfully on the land is to be found in the following rhetorical question the district judge asked of defense counsel:
 

 Can drivers, vehicle drivers of any kind, leave this roadway and start driving on farmland, and that’s okay under the law?
 

 | sIn reaching this conclusion, the reasons for judgment refer to
 
 Capone v. Ormet,
 
 01-0060 (La.App. 1 Cir. 6/21/02), 822 So.2d 684. In
 
 Capone
 
 the court noted that:
 

 A motorist shall not drive his vehicle off the pavement or main traveled portion of the highway. Thus, it is unlawful for a motorist to travel in his vehicle on the shoulder or in the roadside ditch. [Emphasis added.]
 

 Id.,
 
 01-0060, p. 10, 822 So.2d at 692.
 

 The plaintiffs contend that the trial court erred in placing the burden of proof
 
 *510
 
 on the plaintiffs. Plaintiffs argue that La. R.S. 9:2800.4 is an exceptional immunity statute, and, therefore, it must be strictly construed against immunity and in favor of general notions of tort liability under La. C.C. art. 2315.
 
 Weber v. State,
 
 93-0062, (La.4/11/94), 635 So.2d 188, 193. Further, a party urging the immunity bears the burden of proving entitlement to the immunity.
 
 Banks v. Parish of Jefferson,
 
 08-27, p. 9 (La.App. 5 Cir. 6/19/08), 990 So.2d 26, 30;
 
 Barabay Prop. Holding Corp. v. Boh Bros. Const. Co., L.L.C.,
 
 07-2005 (La.App. 1 Cir. 5/2/08), 991 So.2d 74, 79;
 
 See also Walls v. Am. Optical Corp.,
 
 98-0455, p. 6 (La. 9/8/99), 740 So.2d 1262, 1267.
 

 In paragraph “II” of the plaintiffs’ Third Amended and Supplemental Petition, the plaintiffs allege that:
 

 [T]he actions taken by defendants, Bowie Lumber Associates and Foret Farms, Inc., detailed in the Original, First, and Second Supplemental and Amending Petitions constituted “intentional acts” and/or “gross negligence” as those terms are defined in La. R.S. 9:2800.4.
 

 The plaintiffs went on to allege that the defendants “intentionally usurped a portion of the foreslope and shoulder area of Hwy. 307 in order to increase their available farming acreage for the purpose of generating additional income.”
 

 |9The plaintiffs further alleged that the action of the defendants in usurping the foreslope was done “without any effort being made to determine if such actions would destroy the highway’s design features for errant motorists who momentarily leave the roadway.” This was followed by an allegation that because these actions were done by the defendants in order to increase profits and without determining if the safety of the motoring public would be impacted that it constituted “intentional acts” or “gross negligence.”
 

 In the plaintiffs’ Fourth Amended and Supplemental Petition, the plaintiffs alleged that the highway right of way granted by Bowie was for an unrestricted 60-foot right of way, 30 feet on either side of the center line, with the intention “to allow DOTD the ability to construct, service, repair, and maintain both the main roadway and the shoulder and foreslope regions of the highway structure, out to a point 30 feet from the center of the center-line of the Highway.”
 

 The plaintiffs alleged that the defendants intentionally “usurped” this right of way for farming purposes “without any effort made to determine if such farming actions would adversely impact the highway’s design and safety features for errant motorists who momentarily leave the roadway.”
 

 While admitting that the decedent left the roadway, the plaintiffs alleged that such a “momentary and inadvertent movement ... was not an unlawful act as that term is defined in La. R.S. 9:2800.4.”
 

 This last allegation is one of the key issues in the case. The plaintiffs admit that the decedent was driving off the roadway when the accident occurred. From this admission, the district court, in essence, went on to conclude that as a matter of law that the decedent was not lawfully on the defendants’ land and that the fatal accident was not the result of either the intentional act or the gross negligence of |inthe defendants. It was within the province of the district court to determine, pursuant to the motion for judgment on the pleadings whether, as a matter of law, the decedent was not lawfully where the accident occurred within the intendment of La. R.S. 9:2800.4. As a conclusion of law, such a finding would be subject to
 
 de novo
 
 review by this Court.
 

 The question of whether the acts of the defendants could be characterized as “in
 
 *511
 
 tentional acts” or “gross negligence” within the procedural confínes of a motion for judgment on the pleadings is more difficult.
 

 While La. C.C.P. art. 965 requires that “all allegations of fact in the adverse party’s pleadings shall be considered true,” this does not mean that it is sufficient to merely make the conclusory allegations that the acts of a defendant were either “intentional” or grossly negligent.
 

 Here we have to determine whether there was sufficient information in the record that would be available for consideration by the district court under the procedural limitations of a motion for judgment on the pleadings, such that the trial court could reasonably have concluded that the actions of the defendants were neither intentional nor grossly negligent.
 

 La. R.S. 9:2800.4 does not define intentional act. The plaintiff argues that when the defendants made the decision to conduct farming operations in the area of the foreslope, their conscious and knowing decision to do so constitutes an intentional act.
 

 The trial court opted to adopt the analysis of the meaning of intentional act as found in
 
 Ables v. Minvielle,
 
 09-364 (La.App. 3 Cir. 10/7/09), 22 So.3d 1129, which in turn adopted the definition enunciated by the Louisiana Supreme Court in |na worker’s compensation context in
 
 White v. Monsanto Company,
 
 585 So.2d 1205 (La.1991):
 

 LSA-R.S. 23:1032 makes worker’s compensation an employee’s exclusive remedy for a work-related injury caused by a co-employee, except for a suit based on an intentional act. The words “intentional act” mean the same as “intentional tort.” [Emphasis added.] The meaning of “intent” is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself. Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional.
 

 “Substantially certain to follow” requires more than a reasonable probability that an injury will occur and “certain” has been defined to mean “inevitable” or “incapable of failing.” Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing.
 

 Id.
 
 at p. 1208.
 

 This analysis/definition of intentional act was also quoted and followed by the Louisiana Supreme Court (again in a worker’s compensation context) in
 
 Reeves v. Structural Preservation Systems,
 
 98-1795 (La.3/12/99), 731 So.2d 208.
 
 Reeves
 
 is instructive in that it was a case wherein an employee was directed by his supervisor to move a piece of heavy equipment manually that should have been moved by a forklift according to OSHA standards, resulting in injury to the employee. The piece of equipment was required by OSHA to bear a sticker saying: “DO NOT MOVE MANUALLY.” The supervisor testified that he had requested a forklift, but one was not made available on the day of the injury. He 11?also testified that he feared that the manual moving of the equipment would eventually result in someone being injured. Thus, the injury to the employee was the foreseeable consequence of the violation of
 
 *512
 
 the OSHA rule, but the Louisiana Supreme Court, nonetheless, held in
 
 Reeves
 
 that it was not “intentional”:
 

 In
 
 Bazley [v. Tortorich,
 
 397 So.2d 475, 480 (La.1981) ], where the plaintiff did not allege that his co-employee either desired the consequences of his acts or believed they were substantially certain to follow his acts, we held that the co-employee’s acts of operating a garbage truck without a working horn, disregarding mechanical and electrical maintenance standards, failing to keep a lookout, failing to stop in a safe place and failing to warn plaintiff of danger did not amount to an intentional act.
 
 Id.
 

 Since the
 
 Bazley
 
 case, this Court has continued to narrowly construe the intentional act exception. Under such narrow construction, we have held that “violation of a statute alone is not per se such an intentional act as will result in the employer’s tort liability if injuries are sustained by an employee because of the violation.”
 

 [[Image here]]
 

 Our courts of appeal have likewise narrowly construed the intentional act exception according to its legislative intent and have almost universally held that employers are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment. [Citations omitted.]
 

 [[Image here]]
 

 If the actor throws a bomb into an office occupied by two persons, but swears that he only “intended” to hurt one of them, we must conclude that he is nonetheless guilty of an intentional tort as to the other, since he knows to a virtual certainty that harmful consequences will follow his conduct, regardless of his subjective desire.
 

 Malone & Johnson, Louisiana Civil Law Treatise, Volume 14, Workers’ Compensation Law & Practice, § 365, p. 208. |1S“ ‘Substantially certain to follow’ requires more than a reasonable probability that an injury will occur and ‘certain’ has been defined to mean ‘inevitable’ or ‘incapable of failing.’ ”
 
 Jasmin v. HNV Cent. Riverfront Corp.,
 
 [642 So.2d 311]
 
 supra
 
 at 312 [ (La.App. 4 Cir.1994) ]. “[A]n employer’s mere knowledge that a machine is dangerous and that its use creates a high probability that someone will eventually be injured is not sufficient to meet the ‘substantial certainty’ requirement.”
 
 Armstead v. Schwegmann Giant Super Markets, Inc.,
 
 618 So.2d 1140, 1142 (La.App. 4 Cir.1993), writ denied, 629 So.2d 347 (La.1993). “Further, mere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing.”
 
 Id.
 
 (citing
 
 Tapia v. Schwegmann Giant Supermarkets, Inc.,
 
 590 So.2d 806, 807-808 (La.App. 4 Cir.1991)).
 

 Id.,
 
 1998-1795, pp. 6-10, 731 So.2d at pp. 211-213.
 

 In applying this concept of “intentional act” to the pleadings in this case, the trial court employed the following reasoning:
 

 Plaintiffs fail to allege (nor would they) that the defendants intentionally desired to kill or injure Mr. Daigle or other passerby motorists. The question becomes: were the defendants substantially certain that a tractor-trailer, or any other type of vehicle, was going to roll over when they cut away the foreslope? The answer is obviously no. It is not inevitable that a vehicle will travel at anytime onto the foreslope, especially since by law motorists are not supposed to go onto it. Furthermore, a vehicle may never come to pull over on the side
 
 *513
 
 of the road at anytime. If motorists use care when driving, vehicles may never need to even come near the shoulder. While the fact that Mr. Daigle’s tragic accident did happen, just because it did happen does not mean that it was inevitable. Had Mr. Daigle been able to maintain control of the tractor-trailer, the vehicle would never had gone onto the foreslope.
 

 The district court found that the first judgment on the pleadings rendered by the district court held that La. R.S.9:2800.4 applied and that the decedent was not lawfully on the defendants’ property. We interpret this to mean that the property where the accident occurred should be considered farm land, i.e., the type of land 114to which La. R.S. 9:2800.4 applies. We further interpret the district court’s reasons for judgment in connection with the second judgment as finding that the decedent was not lawfully on the defendants’ farm land at the time of the fatal accident. The district court also found these two findings to be law of the case and, therefore, controlling at the time it rendered its second judgment on the pleadings. Therefore, the only issue remaining at the time of the rendering of the second judgment on the pleadings was whether the decedent had been injured by either the intentional act of the defendants or by the gross negligence of the defendants. In its written reasons for judgment in connection with the second judgment on the pleadings, the district court found that when the plaintiffs were granted leave to amend, it was for the limited purpose of alleging sufficient facts to constitute one of the two exceptions to the immunity provided by La. R.S. 9:2800.4, either gross negligence or an intentional act on the part of the defendant. The leave to amend was not granted for the purpose of, in effect, relitigating the questions of whether La. R.S. 9:2800.4 applied or whether the decedent was lawfully on the property at the time of the accident.
 

 An excellent explanation of the law of the case doctrine is found in this Court’s opinion in
 
 Bank One, Nat. Ass’n v. Velten,
 
 04-2001, pp. 5-6 (La.App. 4 Cir. 8/17/05), 917 So.2d 454, 458-59:
 

 The law of the case doctrine refers to “(a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate court rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case.”
 
 Petition of Sewerage and Water Bd. of New Orleans,
 
 278 So.2d 81, 83 (La.1973);
 
 Louisiana Land and Exploration Co. v. Verdin,
 
 95-2579, pp. 3-4 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, 65. This doctrine “may bar redetermi-nation of a question of law or a mixed question of law and fact |lsduring the course of a judicial proceeding.” 1 Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure, § 6.7 (1999). Thus, the law of the case doctrine is the proper procedural principle, as opposed to res judicata, for describing the relationship between prior judgments by trial and appellate courts rendered within the same case.
 
 Posey v. Smith,
 
 453 So.2d 1016 (La.App. 3 Cir.1984). The policy reasons behind this doctrine include: (i) avoiding relitigation of the same issue, (ii) promoting consistency of result in the same litigation, and (iii) promoting efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue.
 
 Day v. Campbell-Grosjean Roofing & Sheet Metal Corp.,
 
 260 La. 325, 330, 256 So.2d 105, 107 (1971).
 

 Unlike the statutory doctrine of res judicata, the jurisprudential doctrine of
 
 *514
 
 law of the case is a discretionary guide that will not be applied inflexibly. “Argument is barred where there is merely doubt as to the correctness of the former holding, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice.”
 
 Petition of Sewerage and Water Bd.,
 
 278 So.2d at 83. In addition to the latter exception for palpable error, the jurisprudence has recognized two other contexts in which this discretionary doctrine will not be applied. First, it will not be applied to “supplant the Code of Civil Procedure provision which clearly permits a reconsideration of the overruling of peremptory exceptions.”
 
 Babineaux v. Pernie-Bailey Drilling Co.,
 
 261 La. 1080, 1094, 262 So.2d 328, 332-33 [(1972)];
 
 Landry v. Blaise, Inc.,
 
 2002-0822 (La.App. 4 Cir. 10/23/02), 829 So.2d 661, 666. Second, it will not be applied when the underlying, operative facts upon which the court’s prior decision was based have changed.
 
 Morrison v. C.A. Guidry Produce,
 
 2003-0307 [2003-307] (La.App. 3 Cir. 10/01/02), 856 So.2d 1222, 1226-27. Under the “law of the case” doctrine, an appellate court ordinarily will not reconsider its own rulings of the law in the same case. See
 
 Liberty Bank and Trust Company v. Dapremont,
 
 2002-1504 (La.App. 4 Cir. 2/11/ 03), 844 So.2d 877, (see p. 892);
 
 Evans v. Nogues,
 
 99-2761, p. 4 (La.App. 4 Cir. 9/13/00), 775 So.2d 471, 474;
 
 Sharkey v. Sterling Drug, Inc.,
 
 600 So.2d 701, 705 (La.App. 1 Cir.[1992]). [Emphasis added.]
 

 Id.
 

 |1fiWe find that of the many facets of the law of the case considered in
 
 Velten, supra,
 
 the two that are relevant to the instant case are: (1) Argument is barred where there is merely doubt as to the correctness of the former holding, but not in cases of palpable former error or applied so mechanically as to accomplish manifest injustice; and (2) it will not be applied when the underlying, operative facts upon which the court’s prior decision was based have changed.
 

 Addressing the second factor first, we find that nothing presented by the plaintiffs in connection with their Third and Fourth Amending and Supplemental Petitions presents a change in the operative facts upon which the district court’s original judgment on the pleadings was based.
 

 Nor do we find anything about the application of the law of the case that could be characterized as manifest injustice or palpable error. It is difficult to see where there is even any “mere doubt as to the correctness of the former holding.”
 

 While the burden of proof is on the party asserting a claim of immunity, where it is uncontested that the plaintiff in this case was not where he was supposed to be, the burden shifts to him to show that he was “lawfully” where the accident occurred. Assuming for purposes of argument, that the decedent was forced off the road by the act of an oncoming vehicle that was unlawfully in his lane and assuming further for purposes of argument that this Court were to consider such a situation as having the effect of conferring upon the decedent the status of a constructive invitee such that he could be considered to be lawfully where he was at the time of the accident, then the plaintiffs could counter the defendant’s claim of immunity. However, we expressly do not decide this question. Moreover, in none of the plaintiffs’ petitions do they allege that the decedent was forced off the road, nor do they make any allegations that would |17have the equivalent legal effect. As a practical matter, in a single vehicle accident such as this, where the only witness is deceased, it is difficult to see how the plaintiffs could
 
 *515
 
 ever hope to establish the existence of such circumstances and there is no legal presumption in favor of the decedent in this regard. This is not a
 
 res ipsa loqui-tur
 
 situation and the plaintiffs do not contend that it is.
 

 In any event, regardless of what the plaintiffs might be able to prove at a trial on the merits, after filing an original petition and then amending and supplementing it four times, they have still failed to make any allegations that would justify the decedent driving his truck onto the land the defendants were farming.
 

 Therefore, this Court concludes that the district court was correct in applying the law of the case as the questions raised by the plaintiffs in regard to the first judgment of the district court cannot be said to equal or exceed reasonable doubt as to the correctness of the first judgment; nor can it be said that the first judgment contained palpable former error; nor did the district court’s rebanee on the first judgment in rendering the second result in manifest injustice.
 
 Velten, supra.
 
 Moreover, as pointed out by the trial court in the written reasons for judgment in connection with the second judgment, the operative facts upon which the district court’s prior decision was based did not change.
 
 Id.
 
 Therefore, we can find no error in the district court’s decision to treat the decedent, based on the first judgment, as having been unlawfully present where the accident occurred, thus bringing the defendants within the ambit of the immunity afforded by La. R.S. 9:2800.4, and leaving as the only issue the question of whether the defendants fall within the exceptions to the immunity by dint of gross negligence or intentional acts — and we find no reversible error in the reasoning of the trial court in 118concluding that as a matter of law that the plaintiffs had, after filing an original petition and four amendments thereto, failed as a matter of law to allege facts sufficient to demonstrate a possible claim based on an intentional act or gross negligence.
 

 For the foregoing reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED