| | | |
|---|---|---|
| **ELIZABETH SEWELL, WIFE OF/AND WILLIAM SEWELL, ELSEBETH FENNER, WIFE OF/AND JAMES FENNER, AND BETH DUESSING, WIFE OF/AND GEORGE DUESSING** | * <br> <br> * <br> <br> * <br> <br> * | **NO. 2020-CA-0381** <br> <br> **COURT OF APPEAL** <br> <br> **FOURTH CIRCUIT** |
| **VERSUS** | | **STATE OF LOUISIANA** |
| **SEWERAGE AND WATER BOARD OF NEW ORLEANS** | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2015-04501, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
* * * * * *
**Judge Tiffany G. Chase**
* * * * * *

(Court composed of Judge Terri F. Love, Judge Edwin A. Lombard, Judge Tiffany G. Chase)


Joseph M. Bruno
Daniel A. Meyer
BRUNO & BRUNO LLP
855 Baronne Street
New Orleans, LA 70113

Alexis A. Butler
THE WHITAKER LAW FIRM, APC
201 St. Charles Avenue, Suite 2500
New Orleans, LA 70170

Michael T. Whitaker (*Pro Hac Vice*)
THE WHITAKER LAW FIRM, APC
100 Dolores Street
P.O. Box 4118
Carmel, CA 93923


      COUNSEL FOR PLAINTIFF/APPELLEE

Craig B. Mitchell
Kiana Aaron Mitchell
Joseph B. Morton, III
Christopher D. Wilson
MITCHELL & ASSOCIATES, APLC
615 Baronne Street, Suite 300
New Orleans, LA 70113

Darryl Harrison
SEWERAGE & WATER BOARD
625 St. Joseph Street
New Orleans, LA 70165


COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED IN PART AND REVERSED IN PART**
**FEBRUARY 24, 2021**

TGC
TFL
EAL

In this action, the Sewerage and Water Board of New Orleans (hereinafter "the S&WB") seeks review of two judgments. The first is the trial court's judgment of February 15, 2019, awarding plaintiffs Sandra Cason, Anne Conger, Gregory Domingue, Elsebeth and James Fenner, Casey LaGarde, John Paul LaGarde, Elena and Gerald Liuzza, Steven and Deborah Marx, Louise and Lionel Price, Louise Williams, and Anita Wood as Trustee of the Emma Davie Trust (collectively, the "Group D Plaintiffs") a total of $770,435.57. The second is the trial court's January 6, 2020 judgment granting plaintiffs' motion for partial summary judgment, finding the S&WB liable for claims for inverse condemnation, custodial liability, and strict liability for timber pile driving. After consideration of the record before this Court and the applicable law, we affirm the trial court's judgment of February 15, 2019, and affirm in part and reverse in part the trial court's judgment of January 6, 2020.

## FACTS AND PROCEDURAL HISTORY

This matter involves the claims of several groups of homeowners who allege property damage from the construction of the Southeast Louisiana Urban Drainage

1

Project in uptown New Orleans (hereinafter "the SELA Project"). The SELA Project involved the construction of multiple drainage canals over several phases. The Group D plaintiffs own properties affected by the phase known as Jefferson II.

The SELA Project began in 2009 when the United States Army Corps of Engineers (hereinafter "the CORPS") entered into a Project Partnership Agreement with the Louisiana Coastal Protection and Restoration Agency (hereinafter "the CPRA"), and sought to make the CPRA the project's non-federal sponsor. The CPRA, however, has no control over local drainage in Orleans Parish; therefore, it entered into a Cooperative Endeavor Agreement with the S&WB. In 2010, the S&WB signed a Programmatic Agreement (hereinafter "the PA") which identified areas where construction activity could potentially damage nearby structures. Two areas were mapped out in the PA, and were designated as the Construction Impact Zone[1] (hereinafter "the CIZ") and the Area of Potential Effect[2] (hereinafter "the APE"). The SELA Project's website contained an informational brochure which explained that noise and vibrations from moving and operating heavy construction equipment could impact structures located within close proximity to a Zone of Impact (hereinafter "the ZOI"). The S&WB also conducted meetings which were open to the public. In order to create a baseline, the S&WB hired Quick & Associates, a forensic contractor, to perform preconstruction inspections of nearby properties. Quick & Associates also installed vibration monitoring equipment.

---

[1] The PA states that the CIZ "consists of construction right-of-way areas where the potential exists for damage to structures to occur as a result of soil vibration associated with sheet-pile driving and removal."

[2] "Area of potential effects means the geographic area or areas within which an undertaking may directly or indirectly cause alternations in the character or use of historic properties, if any such properties exist. The area of potential effect is influenced by the scale and nature of an undertaking and may be different for different kinds of effects caused by the undertaking." 36 C.F.R. § 800.16(d). Specific to the SELA Project, the PA notes that "the potential exists for indeterminable damage within the [APE] as a consequence of construction activities."

Finally, the S&WB instituted a hotline to log any complaints from property owners.

On May 11, 2015, plaintiffs filed claims against the S&WB for damage to their properties, asserting theories of inverse condemnation, custodial liability, negligence, and strict liability caused by timber pile driving. The S&WB filed an answer, including third-party indemnity demands against Cajun Construction, a contractor hired by the CORPS. The case was removed to federal court in July 2015, where the federal trial court granted the contractors' motions for summary judgment. The case was remanded to Civil District Court in January 2017. Due to the large number of plaintiffs, the trial court placed plaintiffs into flight groups. The first group, Residential Trial Group A, was adjudicated in March 2018, after which the court awarded plaintiffs $518,653.08 in damages.[3] The claims of the next group, Residential Trial Group B, were adjudicated in October 2018. The trial court issued its judgment, awarding the Group B plaintiffs $483,779.97 in damages, on November 27, 2018, and then held a hearing to tax costs and fees associated with the litigation. On March 28, 2019, the trial court issued its judgment awarding $193,511.99 in attorney's fees.[4]

On January 6, 2019, a trial began of Residential Trial Group D's inverse condemnation, custodial liability, and strict liability claims. On February 15, 2019, the trial court issued a judgment in favor of plaintiffs in the amount of $770,435.57. On November 13, 2019, plaintiffs filed a motion for partial summary judgment, regarding the S&WB's liability under the same theories of recovery:

---

[3] See *Sewell v. Sewerage & Water Bd. of New Orleans,* 2018-0996 (La. App. 4 Cir. 5/29/19), --- So. 3d ----, 2019 WL 2305673, *writ denied* 2019-1166 (La. 10/15/19), 280 So. 3d 612 (hereinafter "*Sewell I*").

[4] See *Sewell v. Sewerage & Water Bd. of New Orleans,* 2019-0268 (La. App. 4 Cir. 1/20/21), --- So. 3d ----, 2021 WL 221998 (hereinafter "*Sewell II*").

3

inverse condemnation, custodial liability, and strict liability for timber pile driving. This motion was applicable to plaintiffs to be tried in future flights, except those affected by the Louisiana Avenue phase of the SELA project. On January 6, 2020, the trial court issued a judgment granting the motion. The S&WB appeals both judgments of the trial court, regarding: (1) the Group D damage awards, and (2) the trial court's granting of plaintiffs' motion for partial summary judgment on the issue of the S&WB's liability. We will address each in turn.

## DAMAGE AWARDS AT TRIAL

The S&WB raises four assignments of error challenging the damage awards rendered by the trial court. Three assignments of error relate to the trial court's awards under the theory of inverse condemnation, while the fourth pertains to the S&WB's assertion of third party fault of a subcontractor. We will address each in turn.

## STANDARD OF REVIEW

A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rossell v. Esso*, 549 So. 2d 840, 844 (La. 1989). Thus, the trial court's findings will be analyzed under the clearly wrong or manifestly erroneous standard. The appellate court must review the record in its entirety and find that no reasonable factual basis exists for the finding, and that the fact-finder was clearly wrong or manifestly erroneous. *Detraz v. Lee*, 2005-1263, p. 7 (La. 1/17/07), 950 So. 2d 557, 561.

### Inverse Condemnation

The first three assignments of error relate to the trial court's damage awards on plaintiffs' inverse condemnation claims. Under our constitution, a taking is any

4

substantial interference with the free use and enjoyment of property. *Lowenburg v. Sewerage and Water Bd. of New Orleans,* 2019-0524, p. 13, (La. App. 4 Cir. 7/29/20), ---So. 3d at ---, 2020 WL 4364345 at *7. Inverse condemnation claims provide a procedural remedy to a property owner seeking compensation when he is subject to such a taking. *Faulk v. Union Pacific Railroad,* 2014-1598, p 9. (La. 6/30/15), 172 So. 3d 1034, 1043-44. Property shall not be taken or damaged by the State and its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. La. Const. Art. I, § 4.

In reviewing a finding of inverse condemnation, appellate courts must ensure the record supports the trial court's finding that a plaintiff's claim meets a three-prong test: (1) whether a recognized species of property right has been affected; (2) whether the property has been taken or damaged in violation of a citizen's constitutionally protected rights; and (3) whether the taking or damaging has been for a public purpose under La. Const. Art. 1, §4. *See Holzenthal v. Sewerage & Water Bd. of New Orleans,* 2006-0796, p. 14 (La. App. 4 Cir. 1/10/07), 950 So. 2d 55, 66.

This Court in *Sewell I* and *Sewell II* affirmed that a recognized species of property right has been affected, and that any taking or damaging was for a public purpose, relative to the SELA project in general. *See Sewell I*, 2018-0996, at 4-9, --- So.3d at ----, 2019 WL 2305673 at *4-9, and *Sewell II*, 2019-0268, p. 6, --- So. 3d at ----, 2021 WL 221998 at *6. The question remains, however, as to whether the SELA project caused a taking in violation of the Group D plaintiffs' constitutional rights. Substantial interference with the free use and enjoyment of property may constitute such a taking of property. *State through the Dept. of Transp. and Dev. v. Chambers Inv. Co.,* 595 So. 2d 598, 601 (La. 1992). Liability

5

for this sort of taking, however, is limited to where there has been a special damage peculiar to the particular property, and not one suffered generally by the neighborhood. *Constance v. State through Dep't. of Transp. and Dev. Office of Highways*, 626 So. 2d 1151, 1156 (La. 10/28/93). We now examine, in light of these precepts, the trial court's loss of use and enjoyment awards in relation to the facts specific to the Group D plaintiffs.

### *Plaintiffs' Expert's Damage Analysis for Loss of Use and Enjoyment*

The S&WB avers that the trial court erred by accepting the methodology used by plaintiffs' expert, Dr. Wade Ragas, to determine plaintiffs' loss of use and enjoyment of their property. The S&WB contends that Dr. Ragas' model did not conform to the "substantial interference" requirement for a taking, but instead focused on a "less enjoyable use" standard, leading to inconsistent awards among similarly situated plaintiffs. This Court held in *Sewell I,* 2018-0996, p. 18, --- So. 3d at ----, 2020 WL 2305673 at *8, and in a parallel case involving the SELA Project, *Lowenburg*, 2019-0524, p. 14, ---So. 3d ---- at --, 2020 WL 4364345 at *7, that the trial court, using Dr. Ragas' same model, did not err in awarding damages for loss of use and enjoyment of plaintiffs' properties. Further, each Group D plaintiff testified as to their individual damages. The trial court compared Dr. Ragas' recommendations against the testimony at trial, and reduced his recommendations for all of the properties in this case. Moreover, the S&WB provides no evidence to controvert these awards. The determination of what amount will compensate the owner of a property right to the full extent of his loss because of the expropriation of his right must be made on the basis of the facts of each case and in accord with the uniqueness of the thing taken. Furthermore, the weight given to expert testimony is in the province of the trial judge. *Louisiana*

6

*Intrastate Gas Corp. v. Gulf Outlet Lands, Inc.,* 542 So. 2d 705, 706, (La. App. 4 Cir. 1989). Accordingly, we find no error to the S&WB's assignment of error.

### *Property Damage Awards*

The S&WB challenges the trial court's awards for damages to the homes of five of the Group D plaintiffs. Specifically, the S&WB contends the awards are excessive because they are based on the evidence presented by plaintiffs' experts. Dr. Ragas testified that if there was damage to 30% or more of a plaintiff's home, the award to that plaintiff for the loss of use and enjoyment of his property should be 10% of the home's appraisal value. If there was damage to less than 30% of the home, the award should be 5% of the home's appraisal value. In addition, plaintiffs presented property repair estimates prepared by home inspection and engineering consultants Gurtler Bros. Consultants, Inc. (hereinafter "Gurtler") to show the amount of damage to the homes of each of the Group D plaintiffs. The trial court found the Gurtler estimates of the damage to plaintiffs' homes excessive, however, and reduced the estimates. The S&WB asserts that the trial court's reductions should have resulted in a finding of less than 30% damage to the homes of plaintiffs Williams, Domingue, Conger, Price and Fenner. Thus, those plaintiffs' awards should have been 5%, rather than 10%, of their homes' appraisal value for their loss of use and enjoyment. The record, however, does not reflect how much weight the trial court actually gave to Dr. Ragas' suggested percentages. The five plaintiffs testified as to the damages to their homes. Furthermore, the awards to the five plaintiffs are consistent with those of the other plaintiffs in Group D, and with the damages awarded to the plaintiffs in *Sewell I* and *Sewell II,* which have been affirmed by this Court. For these reasons, the awards of the trial

7

court are not manifestly wrong. Accordingly, we find no error to the S&WB's assignment of error.

### Lost Parking Awards

The S&WB avers that the trial court's award of damages for lost parking, which was based upon Dr. Ragas' methodology for calculating those damages, is excessive. Dr. Ragas considered lost parking as a variable related to the square footage of the property where the parking was lost, as he did previously in *Lowenburg,* 2019-0524, p. 25, --- So. 3d at ----, 2020 WL 4364345 at *12. The S&WB made an identical argument on appeal in *Lowenburg*, which was rejected by this Court. Similarly, as in *Lowenburg,* the S&WB failed to present expert testimony at trial to contradict Dr. Ragas' methodology for valuing lost parking. In the case *sub judice*, the trial court considered the testimony of each plaintiff regarding parking access, as well as the number of months during the SELA project that access was affected. The trial court then reduced plaintiffs' damages for lost parking. The finding of the trial court is supported by the facts presented. Accordingly, we find no error to the S&WB's assignment of error.

### Lost Rent Award

The S&WB avers that the trial court erred in finding a taking and awarding damages for lost rent of the LaGarde plaintiffs' property. In the alternative, the S&WB argues that the trial court's award of $81,000 in lost rent to the LaGarde plaintiffs lacked a factual basis. The LaGarde property was surrounded on two sides by the SELA project but was not on the project's construction route. One of the owners of the property, plaintiff Casey LaGarde, testified that before the SELA project started, he renovated the house and offered it as a furnished rental. The

8

first tenant paid $10,000 per month from January 1 to March 1, 2013. After the SELA project began, Mr. LaGarde had trouble accessing the property. Nevertheless, he rented the house at $10,000 per month from November 1, 2013 through April 1, 2014. Mr. LaGarde testified that the tenants complained about the SELA project causing noise, traffic, and impeding their access to the property. They also reported cracks developing in the walls of the house. Mr. LaGarde did not rent the house for the next seven months, although he lived there himself with his brother, a co-owner. Mr. LaGarde testified that he continued to attempt to rent the house, but no one chose to rent it because of the SELA project construction. He was able to rent half of the house between November 2014 and March 2015. For the next 10 months, the house remained unrented. Mr. LaGarde testified that he rented the house once more for four months before he and his brother decided to sell it, due mainly to damage to the house.

During the 48 months Mr. LaGarde attempted to rent the property during the SELA project, the house was vacant for 31 months, and during four months half-rented. At trial, plaintiffs requested an award of $310,000 for rental losses during the period of SELA construction, based on 31 vacant months at $10,000 per month. The trial court awarded the LaGardes $81,000 in lost rent, noting that regardless of the SELA project, the property may not have been rented every month, and that the LaGarde brothers lived there themselves when the property was vacant. The trial court has great discretion in awarding damages, and we find that the record does not support disturbing this award for loss of rent. Accordingly, we find no error to the S&WB's assignment of error.

**Third-Party Fault**

9

The S&WB avers its liability for loss of use and enjoyment awards to the Group D plaintiffs should be reduced based upon the comparative fault of a third party. The party asserting comparative fault bears the burden of proof by a preponderance of the evidence that the other party's fault was a cause in fact of the complained of damage. *Hankton v. State*, 2019-0557 (La. App. 4 Cir. 3/4/20), 294 So. 3d 25, 33. We will examine this issue as it relates specifically to the Group D plaintiffs' loss of access to their homes and quiet enjoyment of their property.

The S&WB avers that comparative fault should have been imposed by the trial court for damages due to the negligence of one of the federal contractors, Cajun Construction, and the judgment against the S&WB reduced accordingly. The S&WB states that several plaintiffs at trial testified they lost the use of their driveways during the SELA project in part due to Cajun Construction's workers blocking them with their vehicles and equipment. The S&WB also contends that plaintiffs testified at trial as to Cajun Construction's workers creating noise early in the morning.

Blocked driveways and access caused by a contractor and its employees constitute negligence. *See Constance v. State Through Dept. of Transp. and Dev.*, 626 So. 2d 1151, 1157 (La. 1993). This Court concluded in *Sewell I* that the evidence did not support the apportionment of fault against the CORPS or the contractors for any negligence in performing obligations as anticipated under the applicable contracts. *Sewell* I, 2018-0996, p. 15, --- So. 3d at --, 2019 WL 2305673 at *8. The issue of Cajun Construction's workers' negligence is, however, one new to the case *sub judice*.

Several plaintiffs, including Sandra Cason, Anita Wood, and Alaina Liuzza, testified at trial to workers blocking their driveways and/or making noise early in

10

the mornings during the SELA project construction; however, none of the plaintiffs could conclusively identify Cajun Construction employees as the offenders. John Fogarty, the contract administrator for the CORPS during the SELA project, whose deposition was introduced at trial, testified that in certain instances, the S&WB's employees performed construction work. Plaintiffs' testimony did not conclusively identify Cajun Construction employees, nor did the S&WB put forth evidence to establish that Cajun Construction was at fault for plaintiffs' damages. Accordingly, we find no error to the S&WB's assignment of error.

## MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY

The S&WB maintains that the trial court erred by granting plaintiffs' motion for partial summary judgment. For ease of discussion, we will consider each theory of liability separately: (1) inverse condemnation; (2) custodial liability; and (3), strict liability for timber pile driving.

## STANDARD OF REVIEW

Appellate courts review a motion for summary judgment *de novo*, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. *Chatelain v. Fluor Daniel Const. Co.*, 2014-1312, p. 3 (La. App. 4 Cir. 11/10/15), 179 So. 3d 791, 793 (citation omitted).

### Future Flights' Claims

Following the Group D trial, plaintiffs filed a motion for partial summary judgment, asking the trial court to find the S&WB liable for all future flights' claims against it under theories of inverse condemnation, custodial liability, and strict liability caused by timber pile driving. The motion was filed pursuant to the doctrine of the law of the case, and requested that prior findings of liability in this

11

case by the trial court and by this Court in *Sewell I and Sewell II* be applied to all remaining litigants across all SELA phases. The trial court granted the motion for partial summary judgment on January 6, 2020, and the S&WB was found to be the sole, liable entity for inverse condemnation and custodial liability for plaintiffs' claims in the Claiborne 1, Claiborne 2, Jefferson 1, Jefferson 2, Napoleon 2, and Napoleon 3 phases. The S&WB was also found to be the sole, liable entity for plaintiffs' strict liability for timber pile driving claims in the Claiborne 1, Claiborne 2, Jefferson 1, and Napoleon 2 phases. The judgment further recited that:

> "Hereinafter, there will be a judicial determination of causation and damages for each of the Plaintiffs' claims against [S&WB], as described above...All Plaintiffs identified above are entitled to seek the full scope of compensatory damages against [S&WB] for their respective claims, allowable by the respective causes of action of inverse condemnation, custodial liability under La. C.C. 2317/2317.1 and strict liability for timber pile driving, including the full scope of just compensation for inverse condemnation, with legal interest thereon from the date of judicial demand until paid, and with costs and reasonable attorney's fees to be determined by the Court."[5]

The question before this Court is whether contested issues of material fact remain as to the S&WB's liability for the future flights' claims under theories of inverse condemnation, custodial liability, and strict liability for timber pile driving. A party may move for summary judgment for all or part of the relief for which he has prayed. La. C.C.P. art. 966 (A)(1). A summary judgment may be rendered

---

[5] The motion for partial summary judgment as to future flights from the Louisiana Avenue SELA phase was deferred pending further discovery by the S&WB. The S&WB did not conduct any further discovery, and on February 11, 2020, the trial court rendered judgment finding the S&WB liable for the inverse condemnation and custodial liability claims of the future Louisiana Avenue phase plaintiffs, with a determination of causation and damages for each plaintiff's claim at trial. This judgment was not designated a final judgment, however, and is therefore not properly before this Court. When a court renders a partial summary judgment, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay; in the absence of such a designation, any such decision shall not constitute a final judgment for the purposes of an immediate appeal. La. C.C.P. art. 1915 (B).

12

dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties. La. C.C.P. art. 966 (E). A motion for summary judgment should be granted if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover in entitled to judgment as a matter of law. La. C.C.P. art. 966 (A)(3). A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could only reach one conclusion, there is no need for trial on that issue, and summary judgment is appropriate. *Smith v. Our Lady of the Lake Hosp., Inc.,* 93-2512, p. 27 (La. 7/5/94), 639 So. 2d 730, 751. A fact is material when its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Chapital v. Harry Kelleher & Co., Inc.,* 2013-1606, p. 5. (La. App. 4 Cir. 6/4/14), 144 So. 3d 75, 81 (quoting *Mandina, Inc., v. O'Brien,* 2013-0085, p. 5 (La. App. 4 Cir. 7/31/13), 156 So. 3d 99, 102). Whether a fact is material is a determination that must be made based upon the applicable substantive law. *Roadrunner Transp. Sys. v.* Brown, 2017-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So. 3d 1265, 1270.

Plaintiffs filed their motion pursuant to the doctrine of the law of the case. The law of the case doctrine generally refers to the binding effect of trial court and/or appellate court rulings during later stages of the same case, including the principle that an appellate court ordinarily will not reconsider its own rulings of law in a subsequent appeal in the same case. *Myers v. Nat'l Union Fire Ins. Co. of Louisiana*, 2011-0751, p. 6 (La. App. 4 Cir. 4/4/12), 90 So. 3d 522, 526.

13

Analogous to *res judicata*, the law of the case doctrine provides for the preclusionary effect of prior rulings in the same case. *Id.* Our Louisiana Supreme Court has stated the policy reasons behind this doctrine as (1) avoiding the relitigation of the same issue; (2) promoting consistency of result in the same action; and (3) promoting efficiency and fairness to the parties by affording a single opportunity for the argument and the decision of the matter at issue. *Day v. Campbell-Grosjean Roofing & Sheet Metal Corp.*, 256 So. 2d 105,107 (La. 1971). The law of the case doctrine is a discretionary guide that will not be applied inflexibly. *Bank One, National Association v. Velten*, 2004-2001, p. 6 (La. App. 4 Cir. 8/17/05), 917 So. 2d 454, 459. It will not be applied when the underlying, operative facts upon which the court's prior decision was based have changed. *Id*. We now turn to an analysis of each of the theories of liability for which the trial court granted plaintiffs' motion for partial summary judgment.

### *Inverse Condemnation Claims*

In reviewing a finding of inverse condemnation, appellate courts must ensure the record supports the trial court's finding that a plaintiff's claim meets a three-prong test: (1) whether a recognized species of property right has been affected; (2) whether the property has been taken or damaged as contemplated by the Louisiana Constitution; and (3) whether the taking or damaging has been for a public purpose under La. Const. Art. 1, §4. *Holzenthal,* 2006-0796, p. 9, 950 So. 2d at 63. As to plaintiffs' inverse condemnation claims, this Court in *Sewell I* and *Sewell II* has affirmed that a recognized species of property right has been affected, and that any taking or damaging was for a public purpose, relative to the SELA project in general. *See Sewell I*, 2018-0996, pp. 4-19, --- So.3d at ----, 2019 WL 2305673 at *4-9, and *Sewell II*, 2019-0268, p. 16, --- So. 3d at --, 2021 WL 221998

14

at *6. However, whether the plaintiffs' property has been "taken" or damaged as contemplated by the Louisiana constitution will turn on situation-specific factual inquiries, given the infinite variety of ways in which government actions can affect property interests. *Faulk,* 2014-1598, p. 30, 172 So. 3d at 1057. These situation-specific inquiries, necessary to prove the second element of plaintiffs' inverse condemnation claims, will lead to contested issues of material fact for trial. We find therefore that the trial court erred in granting partial summary judgment as to the S&WB's liability for plaintiffs' inverse condemnation claims.

### *Custodial Liability Claims*

A finding of custodial liability against a public entity requires that a plaintiff prove four elements: (1) the thing which caused damage was owned or in the custody of the public entity; (2) the thing was defective due to a condition creating an unreasonable risk of harm; (3) the public entity had actual or constructive notice of the defective condition yet failed to take corrective action within a reasonable period of time; and (4) the defect was the cause of plaintiff's harm. *Sewell II,* 2019-0268, p. 12, --- So. 3d at ----, 2021 WL 221998 at *3. This Court affirmed the trial court's finding in *Sewell I,* which was acknowledged in *Sewell II,* that the S&WB exercised custody over the SELA project, which satisfies the first element necessary to a finding of custodial liability. *Sewell I,* 2018-0996, p. 11, --- So. 3d at ----, 2019 WL 2305673 at *6; *Sewell II,* 2019-0268, p. 6, --- So. 3d at ----, 2021 WL 221998 at *3. However, whether the thing causing damage was defective due to a condition creating an unreasonable risk of harm is a matter wed to the facts which must be determined in light of the facts and surrounding circumstances of each case. There is no fixed rule as to whether a thing presents an unreasonable risk of harm. *Dupree v. City of New Orleans,* 1999-3651, pp. 13-14 (La. 8/31/00),

15

765 So. 2d 1002, 1012. Further, proving whether the S&WB had actual or constructive notice of any particular group of plaintiffs' damages would require evidence specific to that group. Therefore, because contested issues of material fact remain as to two elements of custodial liability, we find that the trial court erred in granting plaintiffs' motion for partial summary judgment as to the S&WB's custodial liability for plaintiffs.

### *Strict Liability Claims*

Strict liability for timber pile driving is governed by La. C.C. art. 667, which provides:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. If the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable only upon a showing that he knew or should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or exercise of reasonable care if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.

In *Sewell I*, the trial court found, and this Court affirmed, that the S&WB was the "proprietor" of the SELA project for the purposes of La. C.C. art. 667, relative to ultrahazardous activities such as pile driving, and was therefore liable to homeowners for damage done to their homes due to pile driving during the project. *Sewell I,* 2018-0996, p. 13, --- So. 3d at ----, 2019 WL 2305673 at *6. Therefore, if pile driving occurred during any phase of the project, the S&WB, as the project's proprietor, is liable for damages resulting therefrom to a plaintiff's property. There are no issues of material fact as to liability. The only requirement is that a plaintiff prove damage and causation by a preponderance of the evidence. *Sewell II,* 2019-

16

0268, p. 15, --- So. 3d at ----, 2021 WL 221998 at *6.   Since the trial court in its January 6, 2020 judgment reserved the judicial determination of causation and damages for all claims, we find that the trial court did not err in granting plaintiffs' motion for partial summary judgment as to the S&WB's liability for plaintiffs' claims for damages due to ultrahazardous activities.

## CONCLUSION

We find the trial court did not abuse its discretion in its award to the Group D plaintiffs and affirm the judgment of February 15, 2019.  However, as to the January 6, 2020 judgment, we find the trial court erred in its granting of plaintiffs' motion for partial summary judgment on several of the theories of liability. Specifically, plaintiffs' claims in future flights, under the theories of inverse condemnation and custodial liability, reveal genuine issues of material fact which preclude the granting of summary judgment.  However, as to the claims for strict liability for timber pile driving, we find no genuine issues of material fact exist. Accordingly, the January 6, 2020 judgment is affirmed in part and reversed in part.

## DECREE

The February 15, 2019 judgment is affirmed.  The January 6, 2020 judgment is affirmed in part, and reversed in part.

**AFFIRMED IN PART AND REVERSED IN PART**

17